MUNICIPALITIES — PAYMENT OF REVALUATION PROGRAMS Title 68 O.S. 2481.4 [68-2481.4] (1969), is valid and constitutional Such act levies no new taxes, creates no new debt nor does it devote taxes to a purpose other than that for which such taxes were levied Section 68 O.S. 2481.4 [68-2481.4] is a mere declaration of fiscal policy providing for payment of the revaluation program by all recipient municipalities rather than by counties alone. All ad valorem revenue of recipient municipalities is included whether the levies therefor are for general, special or sinking fund purposes. The Attorney General has had under consideration your request of May 18, 1970, for our opinion wherein you state and inquire: "It has come to my attention that there may be some question as to the validity of . . . 68 O.S. 2481.4 [68-2481.4] (1969), which provides that the cost of a program of revaluation of taxable property . . . be apportioned by the county equalization and excise board among the various recipients of revenues from the mill rates levied. "I would appreciate an opinion from your office on the constitutionality of the above statute in the light of Article X, Section 19 of the Oklahoma Constitution and any other relevant constitutional provisions." Title 68 O.S. 2481.4 [68-2481.4] (1969), provides: "The cost of the comprehensive program of revaluation shall be paid by those who receive the revenues of the mill rates levied on the property of the county in the following manner: The county assessor shall prepare a special budget for such comprehensive program of revaluation and file the same with the county equalization and excise board. That board shall apportion such cost among the various recipients of revenues from the mill rates levied, including the county, all cities and towns, all school districts and all sinking funds of such recipient's, in the ratio which each recipient's total tax proceeds collected from its mill rates levied for the preceding year bears to the total tax proceeds of all recipients from all their mill rates levied for the preceding year. Such amounts shall be included in or added to the budgets of each such recipient, including sinking funds, and the mill rates to be established by the board for each such recipient for the current year shall include and be based upon such amounts. Then the board and each such recipient shall appropriate the said amounts to the county assessor for expenditure for the comprehensive program of "revaluation." Article X, Section 19 Oklahoma Constitution, provides: "Every act enacted by the Legislature, and every ordinance and resolution passed by any county, city, town, or municipal board or local legislative body, levying a tax shall specify distinctly the purpose for which said tax is levied, and no tax levied and collected for one purpose shall ever be devoted to another purpose." In the case of Baker v. Carter,165 Okl. 116, 25 P.2d 747, the court said: "In construing the constitutionality of this legislative enactment, we are not concerned with its propriety, desirability, wisdom, or its practicability as a working proposition. Those questions are clearly and definitely established by our fundamental law to a certainty as functions of the legislative department of government. The function of the court is clearly limited to the determination of the validity or invalidity of the act. There is a presumption that the act is constitutional." The universal rule was well established in the case of Ward v. Bailey, Governor, et al., 198 Ark. 27, 127 S.W.2d 272, wherein the court said: "The Legislature, unless prohibited by the constitution, has a right to declare the fiscal policy. . . ." In the case of Application of State of Oklahoma Building Bonds Commission, 202 Okl. 454, 214 P.2d 934, the court said in the third paragraph of the syllabus: "The Courts must sustain statutes, if possible, and nullify them only when they are clearly unconstitutional." And, in this case the court was confronted with a protest as to the authority of the State Treasurer to purchase the bonds. It was contended that H.B. 4, 22nd Oklahoma Legislature, Extraordinary Session, was violative of Article X, Section 19 Oklahoma Constitution in that the authority granted the State Treasurer to invest in such bonds created a debt for which taxes must be levied for purposes other than the purposes anticipated by the people of the state when the bonded indebtedness represented by said bonds was authorized. In approving the bonds, the court said in the body of the opinion: ". . . . The Legislature, in carrying out the mandate of the people, enacted said House Bill No. 4 wherein, in addition to providing for the creation of such debt and the execution and issuance of bonds evidencing such indebtedness, authority was granted the State Treasurer to invest idle 'public monies' in such bonds. Therefore, in purchasing these obligations, no indebtedness is created, no buildings are constructed, equipped, remodeled or repaired. . . . "Never before has it been contended that, by investing appropriated funds in securities, the funds have been devoted to a purpose other than that for which they were collected. If the interpretation contended for by protestant were enforced to the letter, no treasurer, state or county, could purchase even U.S. Government bonds. It might also be contended that no deposit could be made in a bank and a deposit slip substituted for the money itself." Section 2481.4, supra, appears to be merely a declaration of fiscal policy by the Legislature providing for the payment of the revaluation program by all recipient municipalities rather than by county government alone. All ad valorem tax revenue of the recipient municipalities is included, whether the same be for general, special or sinking funds. No new taxes are levied; no new debt is created. It is therefore the opinion of the Attorney General Section 68 O.S. 2481.4 [68-2481.4] is valid and constitutional. (W. J. Monroe)