**In re INITIATIVE PETITION NO. 360,
STATE QUESTION NO. 662.**

No. 82648.

Supreme Court of Oklahoma.

July 19, 1994.

811

Gary W. Gardenhire and Stanley M. Ward, Norman, for proponents, Walter Hill and Citizens for Congressional and Legislative Reform, Inc.—Appellants as to Ballot Title.

Duchess Bartmess, Oklahoma City (Williams & Connolly, Washington, DC, of counsel), for proponents as to Legal Sufficiency.

Neal Leader, Sr. Asst. Atty. Gen., Oklahoma City, for Oklahoma Attorney General—Appellee as to Ballot Title.

Gary D. Allison, William H. Hinkle, Hinkle, Zeringue Smith, Laura Emily Frossard, Tulsa, for protestants, James C. Thomas and Oklahoma Affiliate of the American Civil Liberties Union.

LAVENDER, Vice Chief Justice.

This is an original action brought pursuant to 34 O.S.Supp.1992, § 8 challenging the legal sufficiency of Initiative Petition 360, State Question 662 (Petition), and an appeal pursuant to 34 O.S.1991, § 10 from the ballot title prepared by the Oklahoma Attorney General. The Petition seeks to amend via the initiative process [1] Article 2 of the Oklahoma Constitu-

___

1. Initiative is the power reserved to the people in    our constitution to propose bills and laws and to

tion by adding a new section to be designated section 12A.

■ In starting our analysis in this matter we emphasize we do not decide the wisdom of the proposed constitutional amendment because that question will be answered by the voters at the polls, rather than by this Court. *In re Initiative Petition No. 348,* 820 P.2d 772, 774 (Okla.1991). Courts do not generally concern themselves with the wisdom or expediency of a law, but only with its legality. *In re Initiative Petition No. 314,* 625 P.2d 595, 608 (Okla.1980). Social and economic policies are committed to the legislative branch of government, and under our fundamental concept of government, the judicial branch is not permitted to interfere therewith except where the legislation transgresses some fundamental legal restriction. *Id.* The chief executive recommends, and the Legislature may enact, or the people exercising their reserved power, may initiate at the polls, any legislation they deem advisable. *Id.* With this understood at the outset we hold the Petition is sufficient for submission to the voters of Oklahoma. We also hold the ballot title prepared by the Attorney General is deficient and we amend it as we are authorized to do under § 10.[2]

## ISSUES

The new section of the Oklahoma Constitution proposed to be enacted into law reads *in toto* as follows:

Section 12A. Beginning January 1, 1995 persons wanting to become a candidate for election to the United States Congress from this State for a term beginning on or after January 1, 1995, shall be subject to the following provisions:

A. Any person seeking to have his or her name placed on the ballot for election to the United States House of Representatives shall be ineligible if, by the end of the then current term of office, that person has served in that office for three (3) two-year terms.

B. Any person seeking to have his or her name placed on the ballot for election to the United States Senate shall be ineligible if, by the end of the then current term of office, that person has served in that office for two (2) six-year terms.

C. A person elected to serve as a member of the United States Congress shall be eligible to serve as a Representative for a total of six (6) years and as a Senator for a total of twelve (12) years for a maximum total of eighteen (18) years as a member of Congress from this State.

D. The provisions of this section shall not be applicable to or include:

1. The years served by any person as a member of the United States House of Representatives or as a member of the United States Senate which began prior to the election at which this measure was enacted.

2. The years served by a person who has been appointed to complete the remainder of a vacated term.

E. The provisions of this Section shall not be construed so as to prevent casting a ballot for any person regardless of the number of years previously served in the United States Congress by writing the name of that person on the ballot, or from having such ballot counted or to prevent a person from campaigning by means of a "write-in" campaign if that procedure is otherwise authorized in this Constitution or by law.

---

enact or reject them at the polls by popular vote independent of the legislative assembly. *In re Initiative Petition No. 348,* 820 P.2d 772, 774 f.n. 1 (Okla.1991); *Wyatt v. Clark,* 299 P.2d 799, 801 (Okla.1956).

**2.** No challenge has been lodged in this matter to the numerical sufficiency of the signatures on the Petition submitted to the Oklahoma Secretary of State on January 31, 1994. On February 11, 1994, the Secretary of State, by letter to the Chief Justice, certified the Petition contained 292,437

signatures as counted by the Office of the Secretary of State and that 208,554 signatures was the number of signatures necessary to place the matter before the electorate pursuant to the provisions of 34 O.S.Supp.1992, § 8. In that no challenge has been filed to the count by the Office of the Secretary of State as would have been allowed under § 8, we determine the signatures submitted with the Petition are numerically sufficient under our law to place the matter before the electorate.

Two general issues are before us concerning the proposal: (1) the legal sufficiency or facial constitutionality of the proposal under both the Oklahoma and United States Constitutions, and (2) the propriety of the ballot title prepared by the Attorney General.

As to the legal sufficiency and constitutional questions, protestants [3] claim the following deficiencies: (1) the Petition facially violates the United States Constitution because it is an attempt to add, by State law, qualifications a person must have to be a member of the United States House or Senate when, protestants allege, the qualifications contained in the United States Constitution for these offices are exclusive; (2) it is facially unconstitutional because it restricts voters' rights to make their own choices as to who should represent them in Congress in violation of their free speech and associational rights under the First Amendment to the United States Constitution; (3) it is facially invalid because it concerns two distinct subjects in violation of the Oklahoma Constitution's prohibition against constitutional amendments containing more than one general subject; and (4) the Petition is invalid because it was drafted and circulated among the people of Oklahoma in a form that was misleading and inaccurate.

The issues concerning the propriety of the ballot title have been raised pursuant to an appeal under 34 O.S.1991, § 10, by the proponents of the Petition, Walter Hill and Citizens for Congressional and Legislative Reform, Inc.[4] They assert the ballot title prepared by the Attorney General is deficient for three reasons. One, they claim the Attorney General refers to the proposal as placing term limits on members of the House of Representatives and Senate, when in reality the proposed constitutional change only places restrictions on ballot access, leaving open the possibility of longer terms than those specified in the proposal through the vehicle of "write-in" campaigns. They claim

referring to the measure as providing for term limits misstates the gist of the proposal and is misleading. Two, they claim the Attorney General's ballot title contains a sentence which is argumentative and conveys partiality or bias against the proposal by conveying the message Oklahoma will be at a disadvantage in Congress if the measure is enacted into law, unless other states approve similar measures, because in those states not enacting similar measures members of Congress will be allowed to serve longer in either the House or Senate. Third, they assert the ballot title in certain particulars does not comply with 34 O.S.Supp.1992, § 9(B)(2) and (3), which require the ballot title to explain in basic words, which can be easily found in dictionaries of general usage, the effect of the proposal and that it should be written on the eighth-grade reading comprehension level, because the word "would" is used instead of the word "does" at three places in the ballot title. Proponents submit a substitute ballot title with their appeal.

These then are generally the arguments before us. Initially, we dispose of the arguments concerning the legal sufficiency and constitutionality of the Petition and the proposition it seeks to enact into law by a vote of the people. Lastly, we will turn to the adequacy of the ballot title prepared by the Attorney General.

## PART I: LEGAL SUFFICIENCY

### A. CONSTITUTIONALITY UNDER UNITED STATES CONSTITUTION.

■ Protestants first two challenges to the legal sufficiency of the Petition involve assertions the proposed constitutional addition is facially unconstitutional. They first contend the proposal is unconstitutional because it attempts to add, by State law, qualifications a person must have to be a member of the United States House or Senate when, protestants allege, the qualifications contained in

---

3. Protestants are James C. Thomas, a citizen of Oklahoma and a resident and registered voter in Tulsa County, State of Oklahoma, and the Oklahoma Affiliate of the American Civil Liberties Union.

4. We note the proponent named on the initiative petition filed with the Secretary of State on November 1, 1993, that we have been furnished is a Patsy S. Fancher of Edmond, Oklahoma. We assume Ms. Fancher is somehow related to the organization Citizens for Congressional and Legislative Reform, Inc.

the United States Constitution for these offices are exclusive.[5] Their contention is that only through the process contained in the United States Constitution itself for amendments of that document [U.S. CONST. Art. V] can term limits be imposed on Representatives and Senators. Protestants secondly allege the proposed amendment is facially unconstitutional because it restricts voters' rights to make their own choices as to who should represent them in Congress in violation of their free speech and associational rights under the First Amendment to the United States Constitution, as incorporated through the Fourteenth Amendment to the United States Constitution. U.S. CONST. Amend. I; U.S. CONST.Amend. XIV. In our view, neither of these constitutional challenges are appropriate for determination at this pre-election stage and in the circumstances of this case the voters' basic right to vote on changes to the Oklahoma Constitution should not be abridged.

■ We have recognized that the people's right to institute change through the initiative process is a fundamental characteristic of Oklahoma government. *In re Initiative Petition No. 348*, 820 P.2d at 775. The initiative process is precious to the people and courts are zealous to preserve it to the fullest tenable measure. *Oliver v. Tulsa*, 654 P.2d 607, 613 (Okla.1982). All doubt as to the construction of pertinent provisions are to be resolved in favor of the initiative [*Id.*] and the initiative power should not be crippled, avoided, or denied by technical construction by the courts. *Ruth v. Peshek*, 153 Okla. 147, 5 P.2d 108, 111 (1931).

■ We have recognized, however, the right of initiative is not absolute and there are both constitutional and statutory limitations on the process. *In re Initiative Petition No. 348*, 820 P.2d at 775; *In re Initiative Petition No. 344*, 797 P.2d 326, 330

(Okla.1990). We may reach a facial constitutional attack in a pre-election setting, when raised, if in this Court's opinion to do so could prevent a costly and unnecessary election. *In re Initiative Petition No. 349*, 838 P.2d 1, 8 (Okla.1992) *cert. denied*, —— U.S. ——, 113 S.Ct. 1028, 122 L.Ed.2d 173 (1993); *In re Initiative Petition No. 315*, 649 P.2d 545, 548 (Okla.1982); *In re Supreme Court Adjudication of Initiative Petitions in Norman, Oklahoma No. 74–1 & No. 74–2*, 534 P.2d 3, 8 (Okla.1975). In addition to a determination by this Court that reaching such an issue could or may prevent the holding of a costly and needless election, we have limited such pre-election review to clear or manifest facial constitutional infirmities and have noted we will not reach challenges to the interpretation, implementation or application of an initiative proposal because such challenges present only abstract questions which will not be reviewed at a pre-election stage. *In re Initiative Petition No. 358*, 870 P.2d 782, 785–786 (Okla.1994).

In essence, our cases set out our discretionary authority to reach clear and manifest facial constitutional challenges at the pre-election stage if, in our opinion, to do so will prevent the holding of a costly and unnecessary election. Although we have used this discretionary authority on numerous occasions we must not forget it is of a discretionary character and, in our view, we must always keep in mind, before exercising such authority, the fundamental basis of the peoples' right to institute change and express their will through the initiative process. Only in the clearest cases do we believe it is essential to use the discretionary authority, and only in the clearest cases do we believe it is warranted to interfere with the people's basic right to vote on important issues by a holding of constitutional infirmity. Based on the submissions in this case, we are uncon-

---

5. U.S. CONST. Art. 1, § 2, cl. 2 and U.S. CONST. Art. 1, § 3, cl. 3, what are referred to by the parties as the qualification clauses in regard to U.S. Representatives and Senators, provide as follows, respectively:

No person shall be a Representative who shall not have attained to the age of twenty five Years, and been seven Years a Citizen of the United States, and who shall not, when elect-

ed, be an Inhabitant of that State in which he shall be chosen.

and

No person shall be a Senator who shall not have attained to the Age of thirty Years, and have been nine Years a Citizen of the United States, and who shall not, when elected, be an inhabitant of that State for which he shall be chosen.

vinced both that the constitutional infirmities lodged by protestants are clear or manifest, or that reaching the merits of those challenges would prevent the holding of a costly and unnecessary election. Accordingly, we decline to reach the constitutional challenges lodged by protestants in this case.

At least three courts have decided questions similar to those raised by protestants based on arguably similar term limit provisions. *U.S. Term Limits, Inc. v. Hill,* 316 Ark. 251, 872 S.W.2d 349 (1994) *cert. granted,* —— U.S. ——, 114 S.Ct. 2703, 129 L.Ed.2d 832 (1994); *Thorsted v. Gregoire,* 841 F.Supp. 1068 (W.D.Wash.1994); *Stumpf v. Lau,* 108 Nev. 826, 839 P.2d 120 (1992). In each case these courts found the provision seeking to limit the terms of federal Representatives and Senators unconstitutional based on the argument the states did not have authority to add qualifications (i.e. term limits) to the qualifications set forth in the United States Constitution.[6] However, only in one was the decision made at the pre-election stage. *Stumpf v. Lau, supra.*

In *Stumpf,* however, the decision was by a 3–2 majority only and a cogent dissent by Justice Steffen, joined by Justice Young, recognized the highly complex nature of the question presented, necessitating an in-depth analysis of the available history of the framers' intent in enacting the qualification clauses of the United States Constitution. 839 P.2d at 128–130 (Steffen, J. dissenting). Justice Steffen also recognized potentially valid arguments that the qualifications specified in Art. I of the United States Constitution were merely a "floor" or minimum set of qualifications, but that the states retained power to add qualifications or conditions for the election of our federal representatives, although he did not deem it necessary to decide the matter definitively at the pre-election stage. 839 P.2d at 129–130.

Further, in *Stumpf,* although the majority there held the proposed measure unconstitutional on grounds a state had no right to enact term limits on United States Representatives or Senators in view of the exclusivity of the qualification clauses in Art. I of the United States Constitution, they also held the proposal was not fit for submission to the voters of that State because the majority could not discern whether the measure was meant to enact a statutory law or amend its constitution, in violation of Nevada initiative law [839 P.2d at 123–124] and they found an insufficiency of signatures to place the measure on the ballot. *Id.* 839 P.2d at 124–125. Neither of these latter deficiencies are involved in the Petition before us. The Petition here clearly proposes an addition to the Oklahoma Constitution and no protest is made to the validity or numerical sufficiency of the signatures accompanying the Petition.[7]

The Arkansas case also contained a cogent dissent by Justice Hays to the effect the qualification clauses of Art. I were intended by the framers only to be the minimum requirements rather than the exclusive ones and that the United States Constitution did not prohibit additional qualifications for Representatives and Senators. *U.S. Term Limits, Inc. v. Hill,* 316 Ark. at 268–270, 872 S.W.2d at 366–368 (Hays, J. concurring in part; dissenting in part).[8] In reading these cases and considering the arguments presented by the protestants we simply cannot say they have carried their burden to show a clear and manifest facial unconstitutionality which in our view would be sufficient to interfere with the peoples' right to vote on this important question.

Furthermore, we believe another reason militates against deciding definitively the constitutional issue based on the exclusivity of the qualification clauses of Art. I of the United States Constitution. On June 20th of this year the United States Supreme Court granted certiorari in the *U.S. Term Limits, Inc.* case. *U.S. Term Limits, Inc. v. Thornton and Hill,* —— U.S. ——, 114 S.Ct. 2703, 129 L.Ed.2d 832 (1994). The questions pre-

6. See note 5, *supra.*

7. See note 2, *supra.*

8. In *Plugge v. McCuen,* 310 Ark. 654, 841 S.W.2d 139 (1992), the Arkansas Supreme Court had earlier refused to consider a challenge to the proposed measure at the pre-election stage based on exclusivity of the qualification clauses of Art. I of the United States Constitution.

sented include the qualification clause arguments advanced by protestants in this case. ── U.S. ──, 114 S.Ct. 2703. If in· this case, we were to agree with protestants' arguments on this issue and later the United States Supreme Court upheld the constitutionality of the Arkansas provision a situation would arise where a new Petition would presumably have to be circulated to obtain a vote on the measure. In our view, in light of the United States Supreme Court's pending determination of this issue and a recognition the people have the right to vote on proposed changes to their fundamental law unless the changes are clearly or manifestly unconstitutional, it is the better practice to allow a vote on the issue to go forward, rather than to interfere with the initiative process at the pre-election stage. To rule otherwise would thwart the initiative process without any real determination that it would prevent a costly and needless election.[9]

## B. SINGLE SUBJECT ANALYSIS.

▇▇▇▇ Protestants complain that the proposed initiative violates the single subject requirement in that the proposal involves two distinct bodies, the United States House of Representatives and the United States Senate, as well as distinct subjects, term limitations for members of the House and term limitations for members of the Senate. Specifically, protestants argue the danger in this *two subject* initiative is logrolling—the offer-

ing of "unrelated proposals in order to secure approval by appealing to different groups which will support the entire proposal in order to secure some part of it although perhaps disapproving of the other parts." *In re Initiative Petition No. 314, supra,* 625 P.2d at 603.

In the case of *In re Initiative Petition No. 314,* this Court has previously held OKLA. CONST. Art. 24, § 1 applies to initiative petitions and that in order for the amendment to pass our sufficiency test it must be limited to one general subject. 625 P.2d at 599–600.[10] We determined Art. 24, § 1 was applicable to prevent "corruption in making, procuring, and submitting initiative and referendum petitions." 625 P.2d at 601. Further, we resolved that the single subject requirement is necessary so that the voter is not forced to vote approvingly for an initiative containing unrelated proposals in order to secure approval of the entire initiative. In *Kerby v. Luhrs,* 44 Ariz. 208, 303, 36 P.2d 549, 554·(1934), the court held that:

> If the different changes contained in the proposed amendment all cover matters necessary to be dealt with in some manner, in order that the Constitution, as amended, shall constitute a consistent and workable whole on the general topic embraced in that part which is amended, and if, logically speaking, they should stand or fall as a whole, then there is but one amendment

---

**9.** Protestants challenge to the proposal to the effect it unconstitutionally impinges on the voters' rights to choose who represents them in Congress (or the related right of a candidate to run for a specific office) in violation of their free speech and associational rights under the U.S. CONST. Amend. I, will also not be decided at this pre-election stage. The arguments presented by protestants are minimal, at best, and they do not show the clear or manifest unconstitutionality necessary for us to enjoin or otherwise prohibit the peoples' right to exercise their franchise on the question submitted by the Petition. In fact, were we to rule at all on the issue at this pre-election stage, we would be inclined to hold the proposal is not violative of either the First or Fourteenth Amendments to the United States Constitution. Numerous courts have held similar provisions constitutional over like arguments in the area of term limits or ballot access restrictions on state or local office holders. *See e.g. Legislature of State of California v. Eu,* 54 Cal.3d 492, 286 Cal.Rptr. 283, 296–303, 816 P.2d 1309,

1322–1329 (1991) *cert. denied,* ── U.S. ── ──, 112 S.Ct. 1292–93, 117 L.Ed.2d 516 (1992). The United States Supreme Court has further recently ruled Hawaii's complete ban on write-in voting did not unreasonably infringe upon its ·citizens' rights under the First and Fourteenth Amendments. *Burdick v. Takushi,* ── U.S. ──, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992). Such cases, thus, cast grave doubt upon protestants' analysis based on the First and Fourteenth Amendments. In any event, we do not definitively decide the issue at this pre-election stage for we recognize any decision by the United States Supreme Court in the Arkansas matter under the qualification clause arguments may inform a decision on these arguments as well.

**10.** OKLA. CONST. Art. 24, § 1 reads in pertinent part, "[n]o proposal for the amendment or alteration of this Constitution which is submitted to the voters shall embrace more than one general subject and the voters shall vote separately for or against each proposal submitted ...".

submitted. But, if any one of the propositions, although not directly contradicting the others, does not refer to such matters, or if it is not such that the voter supporting it would reasonably be expected to support the principle of the others, then there are in reality two or more amendments to be submitted, and the proposed amendment falls within the constitutional prohibition. Nor does the rule as stated unduly hamper the adoption of legitimate amendments to the Constitution. Such a document was presumably adopted deliberately, after careful preparation, as a harmonious and complete system of government. Changes suggested thereto should represent the free and mature judgment of the electors, so submitted that they cannot be constrained to adopt measures of which in reality they disapprove, in order to secure the enactment of others they earnestly desire.

We find the proposed amendment meets the single subject requirement. The sole subject of the proposed amendment is limiting the number of terms certain elected public officers may serve. Although, the proposed amendment affects officeholders in two different divisions of the Congress, and though each have distinct responsibilities, this is not alone sufficient to invalidate the proposed amendment. In *In re Initiative Petition No. 314*, we determined the proposal violated the single subject rule because the four separate and distinct subjects had separate objectives and were not interdependent. 625 P.2d at 607.

In the present proposal, the objective is clearly term limitations for Congressional delegates. Protestants argue that a voter, given the opportunity, conceivably could desire to vote independently on the term limitation of a Representative than that of a Senator. While this may be true, it is also reasonable to conclude that the voters recognize the objective of the initiative as a whole is to limit the terms of office of Congressional delegates and that it is this principle they will be voting for or against when casting their vote. We hold that Protestants have failed to establish the proposed initiative is violative of the one general subject rule under Art. 24, § 1.

## C. PURPORTED DECEPTIVE AND MISLEADING GIST STATEMENT.

■ Protestants also claim the Petition before us is deceptive and misleading because they assert the gist statement required to be on each signature page of the Petition by 34 O.S.Supp.1992, § 3, informed prospective signers that the gist of the proposition was to, "[l]imit terms of elected U.S. Senator to a maximum of 12 years and U.S. Representative to a maximum of 6 years". Protestants take the position the Petition does not really limit terms of Senators and Representatives, but in actuality only restricts their access to a named place on the ballot and the proposal would allow incumbents having already served the required number of years to wage a write-in campaign and, if elected, serve additional terms than the limits specified in the gist statement. We disagree with protestants.

As we set out more fully in PART II of this opinion which concerns an appeal of the ballot title prepared by the Attorney General, in practical effect, the proposition contained in the Petition is a term limit proposal. This is so for the reason the laws of the State of Oklahoma do **not** allow the counting of write-in votes. 26 O.S.1991, § 7–127(1), provides that write-in votes are not valid in Oklahoma. The gist statement as required by § 3 in simple language informs a signer the proposition would impose term limits on United States Representatives and Senators. This is exactly what the proposal would do under current Oklahoma law. Thus, the gist statement cannot be said to be misleading or deceptive and it adequately complied with the provisions of § 3. *In re Initiative Petition No. 347*, 813 P.2d 1019, 1025–1026 (Okla. 1991); *In re Initiative Petition No. 341*, 796 P.2d 267, 274 (Okla.1990).

## PART II: BALLOT TITLE

Our statutes concerning initiative petitions allow an appeal to this Court by any person dissatisfied with the wording of the ballot

title prepared by the Attorney General.[11] 34 O.S.1991, § 10. In determining such an appeal this "[C]ourt may correct or amend the ballot title ... or accept [a] substitute suggested, or may draft a new one which will conform to the provisions of [34 O.S.Supp. 1992, § 9]". § 10(A). Section 9, in addition to procedural matters not pertinent here, sets forth certain requirements that must be satisfied concerning the **wording** of the ballot title. These are set out at § 9(B)(1)–(7) as follows: (1) the title may not exceed two hundred (200) words; (2) it must explain in basic words, easily found in dictionaries of general usage, the effect of the proposition; (3) it must be written on an eighth-grade reading comprehension level; (4) it must not contain words that have a specialized meaning to a particular trade or profession not commonly known to the citizens of the State; (5) it must not reflect partiality in its composition or contain any argument for or against the measure; (6) it must contain language whereby a "yes" vote is a vote in favor of the proposition and a "no" vote is a vote against the proposition; and (7) it shall not contain language where a "yes" vote is, in fact, a vote against the proposition and a "no" vote is, in fact, a vote in favor of the proposition.

Proponents assert the ballot title prepared by the Attorney General, in various particulars, violates § 9(B)(2)–(5). The ballot title prepared by the Attorney General, with the portions challenged by the Proponents underlined, is set out in full:

This measure adds a new section to Article 2 of the Oklahoma Constitution. This measure would place the following limits *on the terms* of United States Representatives and Senators from Oklahoma:

1. *no Representative could serve more than three (3) two-year terms;*

2. *no Senator could serve more than two (2) six-year terms;* and

3. *no person would be able to serve more than six (6) years as a Representative and twelve (12) years as a Senator for a total of eighteen (18) years service.*

Terms begun by a United States Representative or Senator from Oklahoma prior to this measure's passage would not be counted in calculating *term limits.* This measure *would* not apply to persons appointed to complete a vacated term. This measure *would* not prohibit *the casting or counting of write-in ballots.* This measure *would* not prohibit write-in campaigns that are allowed by law. *Unless similar measures are approved in other States, their United States Representatives and Senators could serve longer terms than Oklahoma's representatives or Senators.*

SHALL THIS PROPOSAL BE APPROVED BY THE PEOPLE?

_____ Yes, for the Proposal.

_____ No, against the Proposal.

■ Normally, where the ballot title submitted by the Attorney General is found sufficient it is generally used regardless of the sufficiency of those submitted by other parties. *In re Initiative Petition No. 347, supra,* 813 P.2d at 1032. However, the basic statutory requirements of § 9 must be met and we have outlined the requirements of a ballot title in previous cases. *Id; Arthur v. City of Stillwater,* 611 P.2d 637, 643 (Okla. 1980). These cases provide the title must be in a form to allow a voter to reach an informed decision on whether to approve or disapprove the measure. The question must be specific, but it is not required to contain the proposition from beginning to end. The title must reflect the character and purpose of the measure and it must not be deceptive or misleading. It must also be free from uncertainty and ambiguity. The test is whether the title is couched in such a way that voters are afforded an opportunity to fairly express their will, and whether the question is sufficiently definite to apprise voters with substantial accuracy what they are asked to approve.

■ Proponents initially assert the ballot title prepared by the Attorney General is misleading because it refers to the proposition as a term limit measure, when, in fact, it

---

**11.** The appeal must be filed within ten (10) days after the ballot title is filed by the Attorney General with the Secretary of State as provided in 34 O.S.Supp.1992, § 9. 34 O.S.1991, § 10. The instant appeal was timely filed.

is only a ballot access or restriction proposition, which would not prohibit an individual from serving terms in Congress in addition to those listed in the proposal (three (3) two year terms for House and two (2) six year terms for Senate) by the vehicle of a write-in campaign and the counting of write-in votes. We disagree with proponents.

In practical effect, the proposition contained in the Petition is a term limit proposal. This is so for the reason the laws of the State of Oklahoma do **not** allow the counting of write-in votes.[12] In 26 O.S.1991, § 7–127(1), it is provided, "[t]he following rules shall govern the counting and recounting of ballots: 1. [i]f the name of any person is written on a ballot, said name shall not be counted[ ]".[13]

Under 34 O.S.Supp.1992, § 9(B)(2), the ballot title is required to explain in basic words the effect of the proposition and, under our case law, the character and purpose of the measure. *Arthur v. City of Stillwater,* *supra,* 611 P.2d at 643. In our view, the effect of the proposal, and its character and

purpose, given the current prohibition on the counting of write-in votes, is to set term limits on those who would seek to serve in either the United States House of Representatives or Senate.[14] Accordingly, it is our opinion the ballot title prepared by the Attorney General is not misleading, and it cannot be faulted or found deficient, for describing the proposal as a term limit measure. That is exactly the effect of the proposition under current Oklahoma law.[15]

■ Proponents next claim the Attorney General's ballot title violates § 9(B)(5) because it shows partiality in part of its composition and seemingly contains argument against the proposal. They rely on the last sentence of the ballot title which reads, "[u]nless similar measures are approved in other states, their United States Representatives and Senators could serve longer terms than Oklahoma's Representatives or Senators". As to this aspect of proponents' appeal concerning the language of the Attorney General's ballot title we believe their argument has validity.

**12.** Oklahoma is not alone in prohibiting the counting of write-in votes under its election procedures. *See Burdick v. Takushi,* —— U.S. ——, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992) (Hawaii's prohibition on write-in voting did not violate First and Fourteenth Amendments to the United States Constitution where overall ballot access procedures in Hawaii were otherwise adequate, i.e. to allow easy access by party or independent candidates to the ballot).

**13.** Even where the Secretary of the State Election Board declares an election emergency to the effect it is impossible to conduct one or more elections using voting devices in areas of the State [26 O.S.1991, § 22–101], the counting of write-in ballots is not allowed. 26 O.S.1991, § 22–105(1).

**14.** We also note in her brief in support of the ballot title, the Attorney General attached an exhibit which she asserts is campaign literature used by proponents in garnering signatures on the Petition. As the Attorney General asserts, and we agree, the literature unmistakably and unequivocally describes the proposal as limiting the terms of United States Senators to twelve years (two six-year terms) and United States Representatives to six years (three two-year terms). No mention is made at all that the proposal or any other Oklahoma law would allow for the possibility of winning a seat in Congress through a write-in campaign so that a person could serve

longer than these specified terms. Proponents do not challenge the fact the attachment of the Attorney General was, indeed, their campaign literature used to garner signatures on the Petition currently before us. As such, the record before us seems to exhibit proponents' own representations their proposal, at least presently, is a term limit measure. Furthermore, proponents' arguments in relation to the sufficiency of the Attorney General's ballot title are at odds with the position they take on the legal sufficiency and constitutionality in their June 20, 1994, Response to Protest to Initiative Petition 360. There, they clearly acknowledge (see pp. 11 and 13 of said Response) the Petition would bar certain long-term incumbents from serving more than a designated number of terms.

**15.** We refuse to speculate on the meaning of the proposal should at some time in the future the prohibition on the counting of write-in votes is lifted. The fact is, the prohibition on the counting of write-in voting now exists, and the practical and real current effect of the proposition before us, should it be enacted into law, is to place outer limits on the terms one can serve in Congress. Only if the write-in prohibition is lifted at some time in the future, and someone with standing properly raises the question before us, will a need arise to decide whether the measure (should it be enacted into law, of course) was meant to allow longer terms through the vehicle of a write-in campaign and the counting of write-in votes.

As noted above, the general purpose of a ballot title is to explain in basic words the effect, character and purpose of the proposition. As such, the ballot title should not be couched in such a way that it presents the matter in an argumentative way either for or against the proposal. Although the Attorney General argues the sentence is couched in neutral language, we believe from reading the brief of the Attorney General in support of the ballot title that even she realizes the sentence raises the inference that if the measure is passed Oklahoma will be at some type of competitive disadvantage in Congress, unless other states pass similar measures, because Senators and Representatives from states not having similar measures could possibly serve longer (if reelected) and build up more seniority. We believe such a sentence has no place in this ballot title.

The ballot title should not contain effects which might occur based on what other states may or may not do. Further, if such language is allowed to remain in the ballot title, would it then be required to inform the voting public exactly how many other states have passed similar measures or the exact number of other states that have similar measures currently before them for consideration? Other states have, in fact, passed similar measures to either limit the terms of House or Senate members or curtail ballot access to those having served a certain number of terms or years. *See e.g.* AR. CONST. 73, § 3; Cal.Elec.Code, § 25003 (West); WYO.STAT. § 22–5–104; OR. CONST. Art. II, § 20; MICH. CONST. Art 2, § 10; COLO. CONST. Art. 18, § 9a; MO. CONST. Art. 3, § 45(a). Is the ballot title required to spell out for the electorate exactly and precisely what these other states have enacted or might enact? We think not.

The proposal at issue concerns a Petition as to what Oklahoma will do concerning its peoples' representation in Congress, not what other states have done or might do of a similar nature in the future. In essence, we believe the requirement of § 9(B)(2) concern-

ing the effect of the proposition is satisfied when the ballot title sets out in basic language what the measure will do, not what effect it **might** have if other states fail to pass similar measures. Such possible effects, we believe, are better left for the arguments of the parties in support of or opposition to the proposal when they wage their campaigns prior to a vote on the measure. Accordingly, we hold the sentence challenged by proponents does violate § 9(B)(5) in that it appears to exhibit partiality against the proposal in its composition and it must, therefore, be deleted from any ballot title submitted to the electorate.[16]

■ Proponents finally make a challenge, asserting clarity and simplicity would be fostered by changing one word where it appears in three sentences in the ballot title. The argument applies to the following language which has been underlined:

> This measure *would* not apply to persons appointed to complete a vacated term. This measure *would* not prohibit the casting or counting of write-in ballots. This measure *would* not prohibit write-in campaigns that are allowed by law.

The only argument contained in the briefs of proponents concerning this challenge is that insertion of the word "does" should be substituted for the word "would" as the word "does" is clearer and affirmatively states what the measure does not do. In our view, although it appears the challenge by proponents is overly technical, in that we have found it necessary to delete the sentence discussed above and, therefore, cannot accept *in toto* the submission of the Attorney General we believe it is our prerogative under 34 O.S.1991, § 10, to draft an appropriate ballot title which complies with the dictates of § 9 and we proceed to do so, without deciding whether this last challenge of proponents would alone require rejection of the Attorney General's submission.

---

**16.** We note we do not ascribe any conscious or intentional partiality to the Attorney General by our decision in this case. However, our duty is to make sure the ballot title complies with the dictates of 34 O.S.Supp.1992, § 9(B)(1)–(7). We believe the only way to do this is to delete the challenged sentence because, although possibly not intentionally partial, it is effectively so, and as such it cannot remain.

Accordingly, we are of the opinion the following ballot title, as prepared by the Court, should be adopted:

## BALLOT TITLE

This law adds a new section to the Oklahoma Constitution. The law puts the following limits on the terms of United States Representatives and Senators from Oklahoma:

1. no Representative may serve more than three two-year terms;

2. no Senator may serve more than two six-year terms; and

3. no person may serve more than six years as a Representative and twelve (12) years as a Senator for a total of eighteen (18) years service.

Terms started before passage of the law by a United States Representative or Senator do not count in calculating term limits. The law does not apply to persons appointed to complete a vacated term. The law does not prohibit the casting or counting of write-in votes or write-in campaigns if these things are allowed by law. Write-in voting is not now allowed in Oklahoma. SHALL THIS PROPOSAL BE APPROVED BY THE PEOPLE?

[ ]—Yes, for the Proposal.

[ ]—No, against the Proposal.

## CONCLUSION

The initiative process and the peoples' right to vote on important issues using this process should only be abridged when either the procedural aspects of the process have not been followed or it is clear the measure to be enacted would be violative of some fundamental law (i.e. the Oklahoma or United States Constitutions). Based on the record presented to us and the arguments of the parties, we are of the view the procedural aspects of the initiative process have been followed in regard to this case and, we are further of the view, protestants have failed to carry their burden to show the proposition at issue, if enacted into law as an addition to the Oklahoma Constitution, would be in clear contravention of either the Oklahoma or United States Constitution.

**Accordingly, Initiative Petition No. 360 is declared sufficient for submission to a vote of the people of the State of Oklahoma as State Question No. 662. The ballot title submitted by the Attorney General is declared legally deficient for the reasons specified in this opinion and it is amended as set forth above.**

HODGES, C.J., and SIMMS, HARGRAVE, ALMA WILSON, KAUGER, SUMMERS and WATT, JJ., concur.

OPALA, J., concurs in result.

OPALA, Justice, concurring in result.

The court declares today that the initiative measure under consideration—which in substance would place a limit upon the terms of office that may be held by persons elected to the United States Congress—qualifies for submission to a vote of the people and revises the ballot title by deleting a sentence found to be misleading. While I *concur in clearing the measure for an election,* I write separately to reiterate *my views* on the *outer limit of permissible scrutiny* an initiative measure may undergo when it is before us upon a challenge for alleged legal deficiency.

I would not undertake to test the validity of a measure's content *before* its adoption by a vote of the people. My commitment to the *undiluted force* of *Threadgill v. Cross* [1] continues with *undiminished fervor.* [2] *Thread-*

1. 26 Okl. 403, 109 P. 558 (1910).

2. My unswerving commitment to *Threadgill, supra* note 1, is documented in several reported decisions. *See In re Initiative Petition No. 358,* Okl., 870 P.2d 782, 788 (1994) (Opala, J., concurring in result); *In re Initiative Petition No. 349,* Okl., 838 P.2d 1, 18 (1992) (Opala, C.J., dissenting); *In re Initiative Petition No. 348,* Okl., 820 P.2d 772, 781 (1991) (Opala, C.J., concurring in result); *In re Initiative Petition No. 347,* Okl., 813 P.2d 1019, 1037 (1991) (Opala, C.J., concurring); *In re Initiative Petition No. 341,* Okl., 796 P.2d 267, 275 (1990) (Opala, V.C.J., concurring in result); *In re Initiative Petition No. 317,* Okl., 648 P.2d 1207, 1222 (1982) (Opala, J., concurring in the judgment); *In re Initiative Petition No. 315,* Okl., 649 P.2d 545, 554–555 (1982) (Opala, J., concurring in result); *see also In re Initiative Petition No. 349* (No. 76,437, Feb. 20, 1991)

*gill* teaches that conformity of a measure's content to the commands of our constitution—state and federal—may not be judicially examined *in advance of the initiative petition's adoption by the people.* Presubmission review of a measure's fundamental-law conformity *should be confined to fatally vitiating infirmities in the initiative process itself.* The electorate's effort at legislating *directly must not* be hindered by pre-election attacks *other* than those which target the petition's compliance with some *sine qua non requirement for submission.*

While on its journey to the ballot box a measure proposed by initiative petition is entitled to the same judicial deference that is accorded a legislative bill in progress. Judges cannot police the lawmaking process for conformity to the constitution without raising an impermissible restraint on the free exercise of political activities.[3] Just as the passage of a seemingly infirm bill in progress will not be enjoined to save the cost of processing the act through the Houses of the Legislature, so, too, an initiative that *passes muster for submission* should not be condemned in advance of the measure's adoption just to avoid a costly election. The *burden or loss borne* by the people when an election fails because the law is later held invalid is the *price to be paid* for our system of constitutional democracy that authorizes the electorate to legislate directly.[4] Only in the

clearest case of *firmly settled* and *stable* constitutional jurisprudence that *absolutely* condemns a proposed measure as facially impossible of enforcement, application or execution—and then *only if the protestants have standing to complain* of constitutional infirmity—should this court ever undertake to trump an initiative petition that otherwise meets submission requirements.

The measure under consideration is fit for submission; I hence concur in the court's rejection of the petitioners' constitutional challenge but not in today's pronouncement.

---

(Opala, C.J., concurring in part and dissenting in part) (unpublished opinion).

**3.** *Advocacy* for or against a proposed law is *the purest form of political speech.* Restraint upon free speech is prohibited by the terms of Art. 2, § 22, Okl. Const., which provide in part:
  "Every person may freely speak, write, or publish his sentiments on all subjects, being responsible for the abuse of that right...."

**4.** The constitutional provisions governing the initiative and referendum are Art. 5, §§ 1–8, Okl. Const. The terms of § 1 are:
  "The Legislative authority of the State shall be vested in a Legislature, consisting of a Senate and a House of Representatives; but *the people reserve to themselves the power to propose laws and amendments* to the Constitution and to enact or reject the same at the polls independent of the Legislature, and also reserve power at their own option to approve or reject at the polls any act of the Legislature." (Emphasis added.)

In *Oklahoma Tax Commission v. Smith*, Okl., 610 P.2d 794, 807 (1980), we stated that Art. 5, §§ 1, 2 and 7, Okl. Const., together "comprise an initiative system whereby both the people and the Legislature may propose legislation independently, and neither *can block the effort of the other during the process...."* (Emphasis added.) Our teaching in *Smith* applies with equal force to bar *judicial* as well as *legislative interference* with initiative process. Courts should be loath to impose judicial restraint on the electorate's power to make law. As the Arizona Supreme Court aptly remarked in *State v. Osborn*, 16 Ariz. 247, 248, 143 P. 117, 118 (1914), to place court-imposed restrictions "would be tantamount to claiming the power of life and death over every initiated measure by the people. It would limit the right of the people to propose only valid laws, whereas the other lawmaking body, the Legislature, would go untrammeled as to the legal soundness of its measures."