Colbert, J.
¶1 The sole issue presented for consideration is whether Initiative Petition No. 415, State Question No. 793, satisfies the single subject requirement of article 24, section 1, of the Oklahoma Constitution. We limit our inquiry to deciding the "challenges fundamental to the validity of the Petition as a whole." In re Initiative Petition No. 348, State Question No. 640, 1991 OK 110, ¶ 2, 820 P.2d 772, 774. In doing so, we reemphasize that it is the prerogative of the Oklahoma voters, not this Court, to determine the propriety of Initiative Petition No. 415. See Id. For the reasons expressed herein, we conclude that the proposed amendment embraces one general subject-the provision of optical care services within retail mercantile establishments-and therefore, complies with article 24, section 1, of the Oklahoma Constitution. In so holding, the proponents of the petition may proceed with the remaining statutory requirements.
I. BACKGROUND
A. The Current Law.
¶2 Current Oklahoma law prohibits any optometrist or optician from practicing their profession within a retail mercantile establishment. Okla. Stat. tit. 59, § 596.[1] The purpose of the prohibition is to "establish a *1162 minimum standard of sanitation, hygiene and professional surroundings." Okla. Admin. Code tit. 505:10-5-1. To this end, no optometrist may practice his or her profession within a room or part of a room occupied by a wholesale or retail mercantile establishment. Id. at 505:10-5-1 (4). In addition, all patient entrances for all optometric offices must open onto a "public street, hall, lobby or corridor." Id. at 505:10-5-1 (2). Further, the law directs the Oklahoma Board of Examiners for Optometry to prescribe such rules and regulations as necessary to effect the minimum health and safety standards and to determine what constitutes unprofessional or unethical actions in relation thereto. Okla. Stat. tit. 59, § 585 (A)(5).
B. The Challenged Measure.
¶3 On March 21, 2017, Kiley Raper and Gwendolyn Caldwell (Proponents) filed Initiative Petition No. 415, State Question No. 793 (Initiative Petition) with the Oklahoma Secretary of State. By initiative process, the Initiative Petition seeks to amend Article 20 of the Oklahoma Constitution by adding a new section. The proposed section, Section 3, changes existing law by permitting optometrists and opticians to practice their trades in retail mercantile establishments, such as a Wal-Mart or an enclosed shopping mall. The section purports to eliminate any location restraints on the two occupations by prohibiting laws that: (1) discriminate based on location or setting of the practice, (2) require an optometric office, within a retail mercantile establishment, to have an entrance opening onto a public street, hall, lobby or corridor, or (3) restrain, abridge or infringe on the ability of the retail mercantile establishment from selling, allowing the sale, or providing for the sale of optical goods and services, upon prescription, to the general public within the premises of the retail mercantile establishment. The proposed ballot title also preserves Legislative authority to "restrict optometrists from performing surgeries within retail mercantile establishments, limit the number of locations at which an optometrist may practice, maintain optometric licensing requirements, require optometric offices to be in a separate room of a retail mercantile establishment, and impose health and safety standards."[2]
*1163 ¶4 Petitioners, Oklahoma Association of Optometric Physicians (OAOP) and Dr. Michelle Ward (collectively Opponents), filed an Application to Assume Original Jurisdiction, seeking review of the Initiative Petition's constitutionality under article 24, section 1, of the Oklahoma Constitution. Opponents allege that optometrists and opticians are two distinct professions, one a medical provider/prescription writer; and the latter, a supplier/prescription filler. Because of the distinctions, Opponents contend that including both professions in one initiative petition that permits their respective professions to render services in retail shops violates the general subject rule and constitutes logrolling under article 24, section 1.
¶5 Proponents defend the measure, emphasizing the long-standing interrelationship between the two professions in the commercial context. Proponents' express objective is based on the idea that each step in the optical care delivery chain-eye examination and prescription (optometrist), and fitting for eye wear (optician)-can be accomplished in one convenient location: retail mercantile establishments. According to the Proponents, eye wear retailers and retail mercantile establishments should be able to compete with optometrists who can offer the convenience of one stop shopping for eye examination and purchase of eye wear. Thus, the effect and stated goal of the petition is to permit the expansion of optical care services into retail mercantile establishments.
II. DISCUSSION
¶6 "The first power reserved by the people is the initiative ...". Okla. Const. art. 5, § 2. Inherent, is "the power to propose *1164 laws and amendments to the Constitution and to enact or reject the same at the polls independent of the Legislature, and also reserve power at their own option to approve or reject at the polls any act of the Legislature." Okla. Const. art. 5, § 1. When presented with a challenge to an initiative petition, this Court will assume original jurisdiction to determine the validity of the proposed initiative petition. In re Initiative Petition 403, State Question No. 779, 2016 OK 1, ¶ 3, 367 P.3d 472, 474. A proposed ballot initiative, then, will not be refused or declared invalid in advance of a vote of the people without a "clear or manifest" showing of unconstitutionality. Id. (citing In re Initiative Petition No. 358, State Question No. 658, 1994 OK 27, ¶ 7, 870 P.2d 782, 785 ). "Opponents bear the burden of demonstrating the proposed initiative petition presented in this case clearly and manifestly violates the Oklahoma Constitution." Id. (citing In re Initiative Petition No. 362, State Question No. 669, 1995 OK 77, ¶ 12, 899 P.2d 1145, 1151 ).
¶7 We recognize that the power of the people "to institute change through the initiative process is a fundamental characteristic [and entitlement] of Oklahoma government." Id. (citing In re Initiative Petition No. 360, State Question No. 662, 1994 OK 97, ¶ 9, 879 P.2d 810, 814 ). Accordingly, this Court will diligently protect that entitlement. Id. We have said,
The right of the initiative is precious, and it is one which this Court is zealous to preserve to the fullest measure of the spirit and the letter of the law. Because the right of the initiative is so precious, all doubt as to the construction of pertinent provisions is resolved in favor of the initiative. The initiative power should not be crippled, avoided, or denied by technical construction by the courts.
Id. (quoting In re Initiative Petition No. 382, State Question No. 729, 2006 OK 45, ¶ 3, 142 P.3d 400, 403 (internal citations omitted) ). As a result, we limit consideration of the challenged provision accordingly.
A. ONE GENERAL SUBJECT RULE
¶8 The gravamen of Opponents' challenge is that Initiative Petition No. 415, State Question No. 793, embraces more than one general subject, in violation of article 24, section 1 ; and is thus, unconstitutional logrolling. That constitutional provision, in relevant part, states:
No proposal for the amendment or alteration of this Constitution which is submitted to the voters shall embrace more than one general subject and the voters shall vote separately for or against each proposal submitted; provided, however, that in the submission of proposals for the amendment of this Constitution by articles, which embrace one general subject, each proposed article shall be deemed a single proposal or proposition.
Okla. Const. art. 24, § 1.
¶9 The purpose of the one general subject rule, as set out in article 24, section 1, of the Oklahoma Constitution, is "to prevent imposition upon or deceit of the public by the presentation of a proposal which is misleading or the effect of which is concealed or not readily understandable," ... and to "afford the voters freedom of choice and prevent 'logrolling,' or the combining of unrelated proposals in order to secure approval by appealing to different groups which will support the entire proposal in order to secure some part of it although perhaps disapproving of other parts." In re Initiative Petition No. 314, State Question No. 550, 1980 OK 174, ¶ 59, 625 P.2d 595, 603 (quoting Fugina v. Donovan, 259 Minn. 35, 104 N.W.2d 911, 914 (1960) ); See also In re Initiative Petition No. 403, ¶ 13, 367 P.3d at 477. "Logrolling" is defined as the "practice of ensuring the passage of a law by creating one choice in which a legislator or voter is forced to assent to an unfavorable provision to secure passage of a favorable one" or the converse. Douglas v. Cox Ret. Prop., Inc., 2013 OK 37, ¶ 4, 302 P.3d 789, 792. In examining an anti-logrolling claim, we apply the germaneness test. Thomas v. Henry, 2011 OK 53, ¶ 26, 260 P.3d 1251, 1260. Our focus "is whether a voter (or legislator) is able to make a choice without being misled [or] forced to choose between two unrelated provisions contained in one measure." Id. That is, if it appears that the provisions are misleading or so unrelated that the voters would be faced with an "unpalatable all-or-nothing choice," then an unconstitutional logrolling has occurred Id.;
*1165 Douglas, ¶ 6, 302 P.3d at 792. The purpose of this Court's examination is "not to hamper legislation but to prevent the legislature from making a bill 'veto proof' by combining two totally unrelated subjects in one bill." Thomas, ¶ 26, 260 P.3d at 1260.
¶10 Opponents' summary contention is that, although both Optometrists and Opticians work in connection with the eyes, their roles are patently distinct-one being a medical professional and the other a trained supplier of optical goods. They assert that since the proposed measure removes any restrictions prohibiting the locations of both professions, it must be presented in two separate proposals. Opponents' claim is that the Initiative Petition is not a workable whole; but instead, two separate and distinct considerations in contravention of the one general subject rule. To support their Petition, Opponents point to Initiative Petition No. 344, State Question No. 630, 1990 OK 75, 797 P.2d 326, and In re Initiative Petition No. 314, 1980 OK 174, 625 P.2d 595. But, Opponents' argument is unavailing.
¶11 At the outset, we note that under existing law, most statutory sections governing each of the professions are codified in title 59 under separate chapters: Chapter 13 for optometrists and Chapter 24 for Sale of Optical Goods. See, Okla. State. tit. 59, §§ 581 et seq. and Okla. Stat. tit. 59, §§ 941 et seq., respectively. Yet, there exists some crossover in the statutes governing the two professions. See Okla. Stat. tit. 59, § 943.1 - 943.3 (rules governing both professions in relation to their responsibilities in prescribing and providing eyewear); Okla. Stat. tit. 59, § 596 (prohibits both optometrists and opticians from practicing in retail mercantile establishments); and Okla. Stat. tit. 59, § 942(B) (specifies that the optician fills the prescription for optical devices prescribed by the optometrist, but that the optometrist remains responsible for the full effect of the appliance). Clearly, a statutory and regulatory scheme exists which displays a natural interrelationship between the two professions. In any case, the main thrust of the current governing statutes and administrative rules is focused on delivering high quality visual care services while ensuring that the health and safety of the consuming public are protected. Okla. Stat. tit. 59, § 585 (A)(5).
¶12 Notwithstanding the obvious interrelationship between the two professions, Opponents urge us to apply the reasoning employed in Initiative Petition No. 344, 1990 OK 75, 797 P.2d 326. The proponents there attempted to repeal and replace Article VI of the Oklahoma Constitution in its entirety. The main thrust of the initiative petition was to redefine the executive branch. The proponents claimed that the initiative only implicated one general subject as all of the sections within the initiative related to the executive branch of State government. Id. Upon our examination, we determined that the initiative petition completely redefined the executive branch and addressed numerous subjects. At least twenty-six areas were implicated and identified by this Court. And, "[m]any of the changes made by the ... [p]etition [were] not incidental or necessary to an overall design" of the initiative. Id. ¶ 6, 797 P.2d at 328-29. The subjects were too loosely connected, misleading, and included subject matters which were only tenuously related to the other topics involved. Thus, we held that the initiative under review violated the anti-logrolling provision because it simply did not give the voters a choice. Id. ¶ 9, 797 P.2d at 329.
¶13 This Court faced the same considerations in examining the initiative petition in In re Initiative Petition No. 314, 1980 OK 174, 625 P.2d 595. There, the proponents nominally claimed that the initiative encompassed the single subject of controlling alcoholic beverages within this State. Id. ¶ 37, 625 P.2d at 600. Again, after close examination, the Court identified up to twenty-one separate changes to the Constitution that would be affected should the initiative become law. The Court concluded that the subject areas were so separate and diverse that they must "fall as a whole." Id. ¶ 75, 625 P.2d at 607. No interdependence between the proposed sections existed, especially since the subjects were so diverse as to include permitting, franchising and liquor by the drink. Id. In order to pass constitutional muster, the Court determined that there needed to be at least three separate proposals to embrace all of the elements put forth in the initiative then under review. Id. ¶ 81, 625 P.2d at 608.
*1166 ¶14 The takeaway of Initiative Petition No. 344, 1990 OK 75, 797 P.2d 326, and In re Initiative Petition No. 314, 1980 OK 174, 625 P.2d 595, is not that an initiative petition cannot contain multiple provisions. But, rather, the multiple provisions must be interrelated and interdependent, forming an interlocking package. In re Initiative Petition No. 403, ¶ 12, 367 P.3d at 476.
¶15 A recent case decided by this Court is more akin to the Initiative Petition advanced here. In In re Initiative Petition No. 403, 2016 OK 1, 367 P.3d 472, proponents of an initiative petition sought to add a new article to the Oklahoma Constitution, Article 13-C, creating the Oklahoma Education Improvement Fund, to improve and create funding mechanisms for public education within the State. Id. ¶ 1, 367 P.3d at 473. The initiative included seven separate articles. Upon this Court's review, we determined that each of the articles were "reasonably interrelated and interdependent, forming an interlocking 'package'." Id. ¶ 12, 367 P.3d at 476 (quoting In re Initiative Petition No. 314, ¶ 67, 625 P.2d at 605 ). As the initiative was drafted so that each component was necessary to the accomplishment of one general design, we held that the initiative did not violate the anti-logrolling provision. Id.
¶16 This Court examined another multi-provision initiative petition in In re Initiative Petition No. 360, 1994 OK 97, 879 P.2d 810. There, we examined an initiative that imposed term limits on federally elected Oklahoma representatives serving in the United States Congress. The initiative involved two separate and distinct, yet related, occupations: U.S. Representatives and U.S. Senators. ¶ 3, 879 P.2d at 813. There, the opponents asserted that the proposal encompassed two separate subjects-namely, term limits for U.S. Representatives and term limits for U.S. Senators. ¶ 6, 879 P.2d at 813. In our reasoning, we acknowledged that the proposal could have been brought in two separate initiatives, but concluded that voters could reasonably recognize that the goal of the initiative, as a whole, was to limit the terms of congressional representatives, thereby making the use of two initiatives superfluous. ¶ 20, 879 P.2d at 817. We held that the one general subject rule had not been violated. Id. In that case, the sole purpose of the initiative was to limit the terms of service for federally elected representatives and the initiative accomplished that goal. ¶ 19, 879 P.2d at 817. There, the one general subject was term limits. ¶ 20, 879 P.2d at 817.
¶17 Turning to the challenged Initiative Petition here-the proposed measure impacts two separate professions, both relating to the provision of services for eye care health. Yet, each profession is reliant upon the other. One profession provides diagnostic and prescriptive services for correction of vision problems (optometrists); and, the other profession carries out and implements those prescribed solutions (opticians). Although the measure is comprised of multiple elements, it, nonetheless, creates a single general design that stands as a whole. The one general subject is the expansion of optical care delivery services located in retail mercantile establishments for two interrelated eye care professions. Like the initiatives examined in In re Initiative Petition No. 360 and In re Initiative Petition No. 403, it is reasonable to conclude that voters will recognize that the sole objective is to expand the eye health care delivery services available within the State. Should the Initiative Petition pass, both the diagnostic side (optometrists) and the eyewear delivery side (opticians), may deliver their respective services in retail or wholesale mercantile establishments. Whereas here-two separate and distinct, though interrelated occupations are impacted-we find that no unconstitutional logrolling has occurred. Therefore, we conclude that Initiative Petition No. 415, State Question 793, does not constitute logrolling in contravention of the one general subject requirement found within article 24, section 1, of the Oklahoma Constitution. Under the anti-logrolling provision, an initiative petition may only contain one general subject in order to pass constitutional muster. See In re Initiative Petition No. 314, 1980 OK 174, 625 P.2d 595. In the current case, we find that it does. We hold that the Initiative Petition affects only one general area, laws relating to the practice of optometrists and opticians within retail mercantile establishments.
*1167 B. PUBLIC POLICY-COMMERCIALISM-POLICE POWERS
¶18 Opponents finally urge that public policy and statutory restrictions against commercialism weigh against validation of Initiative Petition No. 415, State Question 793. Specifically, Opponents allege that the challenged measure would be in contravention of Okla. Stat. tit. 59, § 593 which states that:
It is the public policy of the State of Oklahoma that optometrists rendering visual care to its citizens shall practice in an ethical, professional manner; that their practices be free from any appearance of commercialism; that the visual welfare of the patient be the prime consideration at all times; and that optometrists shall not be associated with any nonprofessional person or persons in any manner which might degrade or reduce the quality of visual care received by the citizens of this state.
Okla Stat. tit. 59, § 593. Opponents also cite Massengale v. Oklahoma Bd. of Exam'rs in Optometry, 2001 OK 55, 29 P.3d 558, in support of the proposition that an arrangement or association between optometrists and opticians has the potential for leading to degradation of, or reduced quality of, visual care contrary to the requirements set out in section 593.
¶19 Opponents raise an extensive, yet hypothetical, argument against the proposed Initiative Petition based on the perceived taint of commercialism should the Initiative Petition pass. Nevertheless, this is beyond the scope of today's review.
¶20 Lastly, Opponents also infer that passage of the Initiative Petition will in some way hinder the State's right to exercise its police power to continue to regulate the occupations for the health and safety benefits of the public. Opponents argument is without foundation in this regard. The plain text of Initiative Petition No. 415, State Question 793, expressly reserves to the Legislature the authority to establish "health and safety standards for optical goods and services". The Massengale court also reaffirmed Legislative police powers for the purpose of safety regulation. ¶ 23, 29 P.3d at 568. Based on a reading of the Initiative Petition, optometrists and opticians remain subject to legislatively enacted laws and the governing bodies regulating their respective professions. This Court will not assume that either profession would be permitted to practice in an unsafe or unhealthy manner as a result of the voters' election to pass the Initiative Petition.
III. CONCLUSION
¶21 For the reasons discussed herein, we find that Initiative Petition No. 415, State Question 793, contains one general subject and does not constitute logrolling in violation of article 24, section 1, of the Oklahoma Constitution. In so holding, the proponents of the petition may proceed with the remaining statutory requirements.
ORIGINAL JURISDICTION ASSUMED INITIATIVE PETITION NO. 415 STATE QUESTION NO. 793 DECLARED LEGALLY VALID
CONCUR: Gurich, V.C.J., Kauger, Edmondson, Colbert, Reif, and Wyrick, JJ.
NOT PARTICIPATING: Winchester, J.
DISSENT BY SEPARATE WRITING: Combs, C.J.

Section 596 states:
It shall be unlawful for any optometrist to render optometric care in any retail, mercantile establishment which sells merchandise to the general public; and it shall be unlawful for any person to display, dispense, sell, provide or otherwise purvey to the public, prescription eyeglasses, prescription lenses, frames or mountings for prescription lenses, within or on the premises of in any manner, any retail or mercantile establishment in which the majority of the establishment's income is not derived from the sale of such prescription optical goods and materials.
Okla. Stat. tit. 59, § 596.

The relevant text of the proposed ballot title and initiative petition are as follows:
PROPOSED BALLOT TITLE
This measure adds a new Section 3 to Article 20 of the Oklahoma Constitution. Under the new Section, no law shall infringe on optometrists' or opticians' ability to practice within a retail mercantile establishment, discriminate against optometrists or opticians based on the location of their practice, or require external entrances for optometric offices within retail mercantile establishments. No law shall infringe on retail mercantile establishments' ability to sell prescription optical goods and services. The Section allows the Legislature to restrict optometrists from performing surgeries within retail mercantile establishments, limit the number of locations at which an optometrist may practice, maintain optometric licensing requirements, require optometric offices to be in a separate room of a retail mercantile establishment, and impose health and safety standards. It does not prohibit optometrists and opticians from agreeing with retail mercantile establishments to limit their practice. Laws conflicting with this Section are void. The Section defines "laws," "optometrist," "optician," "optical goods and services," and "retail mercantile establishment."
Shall this proposal be approved by the people?
For the proposal-YES
Against the proposal-NO
A "YES" vote is a vote in favor of this measure. A "NO" vote is a vote against this measure.
INITIATIVE PETITION
To the Honorable Mary Fallin, Governor of Oklahoma:
We, the undersigned legal voters of the State of Oklahoma, respectfully order that the following proposed amendment to the Constitution shall be submitted to the legal voters of the State of Oklahoma for their approval or rejection at the regular general election, to be held on the 6th day of November, 2018, (or such earlier special election as may be called by the Governor) and each for himself says: I have personally signed this petition; I am a legal voter of the State of Oklahoma; my residence or post office are correctly written after my name. The time for filing this petition expires ninety days from _______. The question we herewith submit to our fellow voters is:
Shall the following proposed new Section 3 to Article 20 of the Constitution be approved?
BE IT ENACTED BY THE PEOPLE OF OKLAHOMA THAT A NEW SECTION 3 OF ARTICLE 20 OF THE OKLAHOMA CONSTITUTION BE APPROVED:
§ 3. RIGHT OF OPTOMETRISTS AND OPTICIANS TO PRACTICE IN RETAIL MERCANTILE ESTABLISHMENT
A. No law shall restrain, abridge or infringe on the ability of optometrists or opticians to practice their respective professions within a retail mercantile establishment.
B. No law shall discriminate against an optometrists or opticians based to [sic ] the location and setting of their practice.
C. No law shall require an optometric office located within a retail mercantile establishment to have an entrance opening on a public street, hall, lobby, or corridor.
D. No law shall restrain, abridge or infringe on the ability of a retail mercantile establishment to sell, allow the sale, or provide for the sale of optical goods and services, upon prescription, to the general public within the premises of the retail mercantile establishment.
E. Notwithstanding the limitations of this section, the Legislature may, by statute:
1. limit or prohibit optometrists from performing laser or nonlaser surgical procedures within a retail mercantile establishment;
2. limit the number of office locations at which an optometrist may practice;
3. maintain licensing requirements for the practice of optometry, provided those requirements do not impose restrictions on the location where services are provided or otherwise conflict with subsections A-D of this section;
4. require that an optometric office, when located within a retail mercantile establishment, be located within a separate area or room of that establishment, provided that any such requirement must permit direct access to and from the optometric office from inside the retail mercantile establishment; or
5. impose minimum health and safety standards for optical goods and services, provided such standards do not discriminate against any provider of optical goods and services.
F. Nothing in this section or in Article 23, § 8 of this Constitution shall be construed as prohibiting optometrists or opticians from agreeing with a retail mercantile establishment to limit the scope of their practice.
G. This section shall become effective upon adoption, and laws in conflict with this section shall be deemed null and void. After this section is effective, an optometrist, optician, or retail mercantile establishment may bring a declaratory judgment action to determine whether this section affects the validity of a law.
H. As used in this section:
1. "Law" means any state or local law, including statutes, regulations, rules, ordinances, zoning provisions, and judicial decisions, either now in force or hereafter enacted or issued;
2. "Optometrist" means a person licensed in Oklahoma to practice optometry;
3. "Optician" means a person who fills prescriptions for ophthalmic lenses, including but not limited to spectacles and contact lenses, from licensed optometrists or ophthalmologists;
4. "Optical goods and services" means eyewear, including prescription spectacles and contact lenses, and all services associated with providing, modifying, and repairing such eyewear; and
5. "Retail mercantile establishment" means a business establishment selling merchandise to the general public.