Application of
STATE OF OKLAHOMA BLDG.
BONDS COMMISSION.

No. 34512. Feb. 15, 1950.
Rehearing Denied Feb. 28, 1950.

*214 P. 2d 934.*

Mac Q. Williamson, Atty. Gen., Mainard Kennerly, Asst. Atty. Gen., and Wallace E. Robertson, George J. Fagin, and Stephen D. Holloway, Special Attorneys, all of Oklahoma City, for applicant.

V. P. Crowe and Embry, Johnson, Crowe, Tolbert & Shelton, all of Oklahoma City, for protestant, C. Edgar Honnold.

W. H. Langley, of Stilwell, amicus curiae.

DAVISON, C.J. This is an original proceeding for the approval of the issuance, and the purchase by the State Treasurer of the State of Oklahoma, of State of Oklahoma Building Bonds in the principal amount of $36,000,000 proposed to be issued and so purchased under authority of art. 10, sec. 31, Oklahoma Constitution, and of House Bill No. 4 passed by the Twenty-Second Legislature in Extraordinary Session. The application was filed on behalf of the State of Oklahoma Building Bonds Commission, pursuant to section 12 of the Act.

Said section 31 of article 10 of the Oklahoma Constitution, adopted by special election September 27, 1949, provides as follows:

"The Legislature of the State of Oklahoma is hereby authorized to enact a law whereby the State may become indebted in an amount not to exceed Thirty-six Million Dollars (36,000,000.-00) for the purpose of constructing, equipping, remodeling and repairing any and all buildings of the State, including those of its educational, recreational, penal and eleemosynary establishments; and such law shall provide that two cents (2c) of the tax on each package of cigarettes authorized by 68 O.S. 1941, Par. 586 to 586p, as amended and supplemented to the effective date of this Section, or so much of said tax as may be necessary, shall be pledged and used for the sole purpose of paying the interest on such debt as it falls due, and also to pay and discharge the principal of such debt within twenty-five (25) years from the time of the contracting thereof; provided, that if said tax is not sufficient to so pay and discharge said interest and principal, the Legislature shall impose and provide for the collection of an additional tax, other than an ad valorem tax, sufficient to pay and discharge said interest and principal."

The title of House Bill No. 4 of the Extraordinary Session of the Twenty-Second Legislature, which became effective upon approval of the Governor on December 22, 1949, is,

"An act whereby the State of Oklahoma may become indebted for the purpose of constructing, equipping, remodeling and repairing any and all buildings of the State, including those of its educational, recreational, penal and eleemosynary establishments, as authorized by Section 31, Article X of the Constitution of Oklahoma; creating the State of Oklahoma Building Bonds Commission and authorizing said commission to issue, sell and deliver bonds of the State of Oklahoma representative of such debt; authorizing and requiring the State Treasurer to purchase and sell said bonds under certain conditions prescribed in this act; requiring the Commissioners of the Land Office to purchase said bonds under certain conditions; providing for revenues by which the principal of and interest of such bonds may be retired; authorizing and directing the Oklahoma Tax Commission to pay to the State Treasurer cigarette tax collections for the purpose of creating and maintaining a sinking fund sufficient to pay the principal of and interest on State Building Bonds as such principal and interest come due; and creating a reserve; making provision for call and redemption of said bonds; authorizing and directing said Commission to pledge such revenues to the payment of such principal and interest and to make other appropriate covenants and agreements to effect the purpose of this act; making the bonds nontaxable; authorizing the issuance of interim bonds; authorizing investment of public monies in such bonds, providing for disposal of such investments; authorizing the issuance of refunding bonds and

providing procedure therefor; providing for approval of such bonds by the Attorney General of Oklahoma, and authorizing the approval of such bonds by the Supreme Court of Oklahoma under certain limitations and giving said Court original jurisdiction for such purpose; authorizing the investment of the proceeds of such bonds prior to expenditure; making such bonds lawful investments and collateral security for certain funds; prescribing certain details of such bonds issue and the duties of certain state officials in connection therewith; creating the 'Building Bond Fund'; expressing legislative intent; providing that the provisions of this act are severable; and declaring an emergency."

The act need not be here copied in full.

The jurisdiction of this court in the matter is established by section 12 of the Act. This the Legislature had authority to do by reason of art. 7, sec. 2, Oklahoma Constitution, which provides, in part, as follows:

". . . and the Supreme Court may exercise such other and further jurisdiction as may be conferred upon it by law."

In the case of El Reno Wholesale Grocery Co. v. Taylor, County Treasurer, 87 Okla. 140, 209 P. 749, this court held:

"In matters of general public interest, matters which directly affect the sovereign rights and powers of the state, the Legislature has power, under section 2, article 7, to confer original jurisdiction upon this court."

No objection or protest has been filed attacking the validity of said bonds or the regularity of the steps taken toward their issuance. A careful and thorough examination has been made of the application and exhibits heretofore filed herein and it is found that the proposed bonds offered for approval, and all steps taken as a part of their execution and issuance, are regular and in compliance with the provisions of art. 10, sec. 31, Oklahoma Constitution,

and of House Bill No. 4 of the Extraordinary Session of the Twenty-Second Legislature. For the reasons stated, said bonds should be approved.

A protest has been filed as to the authority of the State Treasurer to purchase the bonds, wherein it is urged that that part of House Bill No. 4, supra, purporting to grant such authority is violative of art. 10, sec. 19, Oklahoma Constitution, and is, therefore, unconstitutional and of no effect. Said section 19, art. 10, of the Oklahoma Constitution, provides as follows:

"Every act enacted by the Legislature, and every ordinance and resolution passed by any county, city, town, or municipal board or local legislative body, levying a tax shall specify distinctly the purpose for which said tax is levied, and no tax levied and collected for one purpose shall ever be devoted to another purpose."

At the outset it is necessary to analyze the situation presented. By the adoption of section 31, art. 10 of the Constitution, the people of the State of Oklahoma authorized the Legislature to enact a law whereby the state might become indebted in an amount not to exceed $36,000,000. The state does become indebted when it issues and sells its bonds, and having become indebted, it has on hand in cash the money paid it as the purchase price of the bonds. This money can be spent "for the purpose of constructing, equipping, remodeling and repairing any and all buildings of the state. . . ." The Legislature, in carrying out the mandate of the people, enacted said House Bill No. 4 wherein, in addition to providing for the creation of such debt and the execution and issuance of bonds evidencing such indebtedness, authority was granted the State Treasurer to invest idle "public monies" in such bonds. Therefore, in purchasing these obligations, no indebtedness is created, no buildings are constructed, equipped, remodeled or repaired. The sum and substance of what he does is the State Treasurer invests public monies in marketable bonds of the state.

Whether or not it is wise to authorize such investment, is a question not within the scope of the authority of this court. The universal rule was well stated in the case of Ward v. Bailey, Governor, et al., 198 Ark. 27, 127 S. W. 2d 272:

"The Legislature, unless prohibited by the Constitution, has a right to declare the fiscal policy. . . ."

In the case of Baker v. Carter, 165 Okla. 116, 25 P. 2d 747, this court said:

"In construing the constitutionality of this legislative enactment, we are not concerned with its propriety, desirability, wisdom, or its practicability as a working proposition. Those questions are clearly and definitely established by our fundamental law to a certainty as functions of the legislative department of government. The function of the court is clearly limited to the determination of the validity or invalidity of the act. There is a presumption that the act is constitutional."

Never before has it been contended that, by investing appropriated funds in securities, the funds have been devoted to a purpose other than that for which they were collected. If the interpretation contended for by protestant were enforced to the letter, no treasurer, state or county, could purchase even U. S. Government bonds. It might also be contended that no deposit could be made in a bank and a deposit slip substituted for the money itself.

House Bill No. 4 of the 22nd Legislature, enacted pursuant to the provisions of art. 10, sec. 31, Oklahoma Constitution, above quoted, authorizes the investment of general funds as well as sinking funds and, also, makes the maturity date of the bonds to be purchased unimportant. It will be noted, herein, the State Treasurer is given authority, if the cash on hand nears exhaustion, to sell as many of said bonds as may be necessary to replenish the fund. This is to be done under supervision of the State Depository Board and the State Budget Director. The purchase of the designated securities is not a diversion of the funds or a use of them for some purpose other than that for which they were collected but is purely an investment of them, for the time during which they would otherwise remain idle in the form of a bank deposit. When the bonds are retired, or sold if need be, the fund is changed back to its original status of cash in the bank. It was not the intent of the people, in adopting art. 10, sec. 19, Oklahoma Constitution, to prohibit an investment of public monies, while otherwise idle, but it was their intent to prevent the dissipation or diversion of the funds which is the only logical meaning of the words used—"devoted to another purpose."

Some contention has been made that the State Treasurer, by purchasing the bonds, would at the same time be buyer and seller of the bonds, destroying the impartial judgment to be exercised in determining whether or not the investment is good. But this goes back to a discussion of the wisdom of the legislation rather than its legality. In the case of Board of Ed. of City of Shawnee v. American Nat. Co., 135 Okla. 253, 275 P. 285, it was held that "the investment of a prior sinking fund by a treasurer in a subsequent bond issue of the same municipal subdivision does not operate as a cancellation, but an investment." Certainly no fund held by a treasurer could be of a higher trust character than money collected for the retirement of a specific obligation. Therefore, if the purchase of a bond with that fund is an investment rather than a diversion of the money, so is the use of the public monies under the provisions of the Act an investment thereof, and not a devotion to a purpose other than that for which the fund was created.

Under the terms of the Act it is the duty of the State Depository Board to determine how much "working capital" should be kept on hand for the efficient operation of the various state departments and how much is available for investment. Protestant contends that all of the funds proposed to

458

be used in purchasing the bonds are funds raised for specific purposes, but that is usually true of all taxes collected. Protestant insists that this court should determine from which specific funds the money should be taken for the investment but that is not our duty. It is the fixed purpose of this act that idle cash on hand not currently needed will be used without taking it from the revenues of any specific department or departments.

From a practical viewpoint the State Treasurer is the custodian of the funds of the various state departments in the manner that a bank is custodian of the funds of its individual depositors. When different tax collections are received by the treasurer and a receipt is issued and a book balance is entered for each individual department, the money itself loses its identity the same as when different deposits are received by a bank and a deposit slip is issued and a book balance entered for each individual depositor. When the treasurer purchases a bond with cash on hand, he no more purchases it with a specific department's fund (say Highway Fund) than a bank in purchasing the same bond with cash on hand would purchase it with a specific depositor's money (say that of John Jones).

In presenting this cause the protestant refers to a list of the various designated separate funds in the State Treasury and presents the matter as if specified sums of money are to be taken out of some of the various funds so as to reduce and impair such separate funds in the making of this investment. But protestant overlooks the fact that this legislation is specifically drafted to avoid any impairment whatever of any one of such separate credits or funds in the treasury even temporarily. So that after investing in these bonds the treasury will still show these same separate funds in full amount, and will still meet all withdrawals from day to day from each and all such separate funds, the same as before this investment, and the same as if this investment had never been made.

In fact, the Act provides, as a condition precedent to the making of this investment, that due calculation must be made to insure that the investment is only made in such sum as will not impair or threaten to impair the continuing solvency of any of such separate funds.

The Act designates the Governor, the Attorney General and the Treasurer (the State Depository Board created by 62 O.S. 1941 §71), as the Board charged with determining what funds are available in the treasury for such investment under the terms thereof. They are officers of high responsibility in state government having access to all records which would reflect the needs of the different departments of government for efficient operation, the trend of tax collections, normal characteristics of each fund whether stable or fluctuating, and the probable demand that will be made upon the cash reserves now on deposit. These officers have discharged their duty. They have determined and have officially certified that the records disclose that the Treasurer may safely buy all this bond issue and continue the day to day handling of each treasury fund and all withdrawals therefrom without any interruption whatever. And there is neither demonstration nor contention by protestant that this determination and certification by the State Depository Board is not well founded in fact.

On this point the Act under consideration provides in section 5(a) as follows:

"The State Treasurer of the State of Oklahoma, by and with the approval and direction of the State Depository Board, is hereby authorized and required to purchase from the Commission at private sale, all or any part of said bonds, or interim bonds, as an investment of the public monies in his possession. It shall be the responsibility of the State Depository Board, in approving such investment, to limit its approval to the investment of only that portion of such public monies as it deems to be more than sufficient to·

meet current expenditures payable from public monies. The State Treasurer is authorized and required to buy, and the Commission is authorized and required to sell to the State Treasurer at private sale as provided in this Section so many of the bonds authorized by this Act, as the State Depository Board will certify in writing to the Commission, may be safely purchased for investment of public monies by the State Treasurer, without handicapping the State of Oklahoma in promptly meeting its obligations. . . ."

The Legislature has placed that duty upon that board, the State Depository Board, as it was within its power to do. Under all the circumstances here presented, this court has no authority to question, in any degree, the findings of the board. Our jurisdiction is limited to a consideration of those elements and characteristics of the act which determine its constitutionality. We hold that said House Bill No. 4 of the Extraordinary Session of the 22nd Legislature, 1949, is not violative of art. 10, sec. 19, Oklahoma Constitution.

Said bonds are approved and the purchase thereof by the State Treasurer, with such monies as are available under the provisions of House Bill No. 4 of the Extraordinary Session of the 22nd Legislature, is also approved. Time within which petition for rehearing may be filed herein is fixed at five days from this date.

ARNOLD, V. C. J., and WELCH, CORN, GIBSON, LUTTRELL, HALLEY, and JOHNSON, JJ., concur.

O'NEAL, J., concurs as to the approval of the bonds but dissents as to the purchase of the bonds by the State Treasurer and School Land Commission.