2016 OK 1

**In re INITIATIVE PETITION NO. 403, State Question No. 779,**

**OCPA Impact, Inc., and David Bond, Petitioners,**

v.

**Shawn Sheehan, Linda Reid, and Melvin Moran, Respondents.**

**No. 114,425.**

Supreme Court of Oklahoma.

Jan. 12, 2016.

Robert G. McCampbell and Travis V. Jett, Fellers Snider, P.C., Oklahoma City, OK, for Petitioners.

D. Kent Meyers, Harvey D. Ellis, Melanie Wilson Rughani, and Paige Masters, Crowe & Dunlevy, P.C., Oklahoma City, OK, for Respondents.

Patrice Douglas and Kathryn Evans Boren, Latham, Wagner, Steele & Lehman, P.C., Oklahoma City, OK, for Amici Curiae Oklahoma Municipal League and Dewey Bartlett.

Ryan C. Owens and Hayley B. Jones, Oklahoma City, OK, for Amicus Curiae the Cooperative Council for Oklahoma School Administration, Inc.

Julie L. Miller, Oklahoma City, OK, for Amicus Curiae the Oklahoma State School Boards Association.

Richard B. Wilkinson, Oklahoma City, OK, for Amicus Curiae the Oklahoma Education Association.

PER CURIAM

### Facts & Procedural History

¶1 On October 21, 2015, Respondents Shawn Sheehan, Linda Reid, and Melvin Moran (Proponents) filed Initiative Petition No. 403 with the Oklahoma Secretary of State. The petition seeks to amend the Oklahoma Constitution by adding a new Article 13–C. The proposed article creates the Oklahoma Education Improvement Fund, designed to provide for the improvement of public education in Oklahoma through an additional one-cent sales and use tax.[1] Funds generated by the one-cent tax would be distributed to public school districts, higher education institutions, career and technology centers, and early childhood education providers for certain educational purposes outlined in the proposed article. Additionally, a percentage of the funds would be used to provide a $5,000.00 pay raise to all public school teachers. The proposed article delegates oversight and auditing responsibilities to the State Board of Equalization and requires monies allocated from the Fund to be used by the Legislature to enhance and not supplant current public education appropriations.

¶2 On November 12, 2015, Petitioners OCPA, Inc. and David Bond (Opponents) filed an Application to Assume Original Jurisdiction in this Court. Opponents raised a single constitutional challenge to the initiative measure, arguing the petition is unconstitutional because it violates the one general subject rule of Art. 24, § 1 of the Oklahoma Constitution. After hearing arguments from the parties and upon consideration, we assume original jurisdiction and hold that Initiative Petition No. 403 embraces one general subject and does not violate Art. 24, § 1 of the Oklahoma Constitution. Initiative Petition No. 403 is legally sufficient to submit to the voters of this state, and the proponents of the petition may proceed with the remaining statutory requirements.[2]

---

1. The proposed ballot title reads:

   This measure adds a new Article to the Oklahoma Constitution. The new article creates a limited purpose fund to improve public education. It levies a one cent sales and use tax to provide revenue for the fund. It allocates funds for specific institutions and purposes related to the improvement of public education, such as increasing teacher salaries, addressing teacher shortages, programs to improve reading in early grades, to increase high school graduation rates, college and career readiness, and college affordability, improving higher education and career technology education, and increasing access to voluntary early learning opportunities for low-income and at-risk children. It requires an annual audit of school districts' use of monies from the fund. It prohibits school districts' use of these funds for administrative salaries. It provides for an increase in teacher salaries. It requires that monies from the fund not supplant or replace other education funding. The Article takes effects [sic] on the July 1 after its passage.
   Initiative Petition No. 403, Proposed Ballot Title.

2. Sections 8 and 9 of Title 34 were amended by the Legislature effective April 28, 2015. Notably, the ballot title is now to be filed separately from the petition and is not "part of or printed on the petition." 34 O.S. Supp. 2015 § 8(A). Additionally, the notice published pursuant to § 8(B) no longer includes the text of the ballot title. According to § 8(H), *after* the signed copies of a petition are timely filed with the Secretary of State, the Secretary of State "shall file a copy of the proponent's ballot title with the Attorney General," which then triggers the ballot title review process in §§ 9 and 10.

   Section 8(I) now requires that the Secretary of State publish a "notice of the filing of the signed petitions and the apparent sufficiency or insufficiency thereof, *and shall also publish the text of the ballot title as reviewed and approved, or if applicable, as rewritten by the Attorney General pursuant to the provisions of subsection D of Section 9 of this title*" and notice that any citizen may file an objection to the count or the ballot title within 10 business days after publication.
   The record before this Court and the Secretary of State's website indicate the only notice pub-

### Standard of Review

¶ 3 "The first power reserved by the people is the initiative...." Okla. Const. Art. 5, § 2. With that, comes "the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls independent of the Legislature, and also reserve power at their own option to approve or reject at the polls any act of the Legislature." Okla. Const. Art. 5, § 1. This Court is vested with original jurisdiction to evaluate and determine the sufficiency of proposed initiative petitions pursuant to 34 O.S. Supp. 2015 § 8.[3] However, we have generally refused to declare a ballot initiative invalid in advance of a vote of the people except where there is a **"clear or manifest"** showing of unconstitutionality. *In re Initiative Petition No. 358*, 1994 OK 27, ¶ 7, 870 P.2d 782, 785 (emphasis added). The power of the people "to institute change through the initiative process is a fundamental characteristic of Oklahoma government." *In re Initiative Petition No. 360*, 1994 OK 97, ¶ 9, 879 P.2d 810, 814. We have emphasized how vital the right of initiative is to the people of Oklahoma and how diligently we must protect this entitlement:

> The right of the initiative is precious, and it is one which this Court is zealous to preserve to the fullest measure of the spirit and the letter of the law. Because the right of the initiative is so precious, *all doubt as to the construction of pertinent provisions is resolved in favor of the initiative. The initiative power should not be crippled, avoided, or denied by technical construction by the courts.*

*In re Initiative Petition No. 382*, 2006 OK 45, ¶ 3, 142 P.3d 400, 403 (internal citations omitted) (emphasis added). Opponents bear the burden of demonstrating the proposed initiative petition presented in this case clearly and manifestly violates the Oklahoma Con-

stitution. *In re Initiative Petition No. 362*, 1995 OK 77, ¶ 12, 899 P.2d 1145, 1151.

### One General Subject

¶ 4 The *sole* challenge to the petition in this case is under Art. 24, § 1, which provides:

> No proposal for the amendment or alteration of this Constitution which is submitted to the voters shall embrace more than one general subject and the voters shall vote separately for or against each proposal submitted; provided, however, that *in the submission of proposals for the amendment of this Constitution by articles, which embrace one general subject, each proposed article shall be deemed a single proposal or proposition.*

Okla. Const. Art. 24, § 1 (emphasis added). The above-emphasized language was added to Art. 24, § 1 in 1952. In *In re Initiative Petition No. 314*, 1980 OK 174, ¶ 38, 625 P.2d 595, 600, this Court held that the one general subject rule of Art. 24, § 1 applies to an initiative petition.

### Germaneness Test

¶ 5 In the case before us, proponents of the petition seek to amend the Oklahoma Constitution by adding a new article—Article 13-C—to create the Oklahoma Education Improvement Fund. In *In re Initiative Petition No. 314*, 1980 OK 174, 625 P.2d 595, proponents of an initiative petition sought to change the alcohol laws of this state by amending the *existing Article 27* of the Oklahoma Constitution to allow for unrestricted franchising arrangements for brewers, on-premises consumption, unlimited advertising, and the sale of liquor by the drink by privately owned licensed on-premises outlets. In finding the petition violated the one general subject rule of Art. 24, § 1, this Court advised that "[t]he changes sought by the multifarious proposal could have been effect-

---

lished regarding this petition was the notice of the filing of the petition alerting citizens of this state of their right to challenge the constitutionality of the petition within ten business days of the notice pursuant to § 8(B). Petitioners' App. B. The ballot title has presumably not yet been reviewed by the Attorney General or published as per §§ 8(I) and 9(D), and no challenge to the

ballot title is before the Court at this time. Additionally, the Petitioners have not raised a challenge to the gist of the proposition in this proceeding.

**3.** The procedures for presenting an initiative petition are outlined in 34 O.S. Supp. 2015 §§ 1-27.

ed either by submission of three separate proposals or a submission amending, under Art. 24, [§ ] 1, *the entirety of Art. 27, as an amendment by article,* as was done in 1959 when prohibition was repealed and Art. 27 was submitted and adopted by a vote of the people." *In re Initiative Petition No. 314,* 1980 OK 174, ¶ 81, 625 P.2d at 608 (emphasis added).

¶ 6 Taking the Court's advice, proponents, in their second attempt at changing the liquor laws of this state, again tendered an initiative petition seeking to amend the Oklahoma Constitution. This time, however, the proponents submitted the proposal as an *amendment to the Oklahoma Constitution by article.* Notably, the initiative petition proposed many of the same substantive changes as the previously stricken petition, including the sale of alcoholic beverages for on-premises consumption and the sale of liquor by the drink by privately owned licensed on-premises outlets. In addition, the proposal abolished the Alcoholic Beverage Control Board and replaced it with a new Alcoholic Beverage Laws Enforcement Commission to enforce the alcoholic beverage laws of the state. Opponents of the petition again argued the portion of the petition authorizing the Legislature to permit the sale of liquor by the drink embraced a different and additional subject matter. *In re Initiative Petition No. 319,* 1984 OK 23, ¶ 8, 682 P.2d 222, 223–224.

¶ 7 The Court rejected the argument and stated: "*In Re Initiative Petition No. 314,* recognized that our constitution may be amended by article under Article 24, Section 1, and that such an amendment may cover changes which would violate the single subject rule *if not proposed in that format. Proponents have complied with that procedure. While the amendment is still required to relate to a single general subject, our previous ruling indicates clearly that the various changes need not meet the test which was applied in Initiative Petition No. 314, and which resulted in the invalidity of that proposal.*" *Id.* ¶ 9, 682 P.2d at 224 (internal citations omitted) (emphasis added).

¶ 8 The Court then applied the following test:

'[G]enerally provisions governing projects so related as to constitute a single scheme may be properly included within the same amendment; and that matters germane to the same general subject indicated in the amendment's title, or within the field of legislation suggested thereby, may be included therein....' [4]

The Court held the provisions of the petition contributed to the overall scheme of control of the sale of alcoholic beverages embodied in the proposed article. The petition was found legally sufficient to submit to a vote of the people.

¶ 9 This Court affirmed the amendment by article approach in 1996 in an opinion authored by Justice Opala. In *In re Initiative Petition No. 363,* 1996 OK 122, 927 P.2d 558, proponents of an initiative petition sought to amend the Oklahoma Constitution by adding a new article which provided for the creation of four locations immediately eligible for authorized gaming, prohibited casino gaming in counties not specifically authorized for a period of five years, created a seven-member state gaming commission with authority to provide regulation and enforcement of casino gambling, provided criminal penalties for violation of gaming laws, legalized obligations incurred in the course of authorized gaming, authorized the commission to collect gaming fees from each licensed gaming facility operator, retaining the legislatively approved amount of its budget and initial operations cost, earmarked the remaining receipts for specific computer-related educational purposes, local governments, and correctional institutions. Opponents challenged the petition for, among other things, a violation of the one general subject rule in Art. 24, § 1.

¶ 10 Rejecting the constitutional attack, the Court reiterated that "when the proposed *constitutional amendment is by a new article* the test for gauging multiplicity of subjects is whether the changes proposed are *all germane* to a singular common subject and purpose or are essentially unrelated to one

---

4. *Id.* ¶ 10, 682 P.2d at 224 (citing *Rupe v. Shaw,* 1955 OK 223, 286 P.2d 1094, and *In Re Initiative Petition No. 271,* 1962 OK 178, 373 P.2d 1017).

another." *Id.* ¶ 15, 927 P.2d at 566. The Court continued:

> In *In re Init. Pet. 319*, the court also observed that *Rupe* included within the single-subject standard components which were incidents, *'necessary or convenient or tending to the accomplishment of one general design notwithstanding other purposes that the main design may be thereby subserved.'* *Rupe* accorded a liberal rather than a narrow or technical construction to the single-subject requirement.[5]

Applying this test, the Court upheld the measure finding that "the elements of taxability, distribution of gaming revenue and of civil liability for debts incurred in gaming to be authorized are *germane* to the general subject of legalization and regulation of authorized casino gambling."[6]

■ ¶ 11 In the case before us, the proposed Article 13–C consists of seven sections. Section 1 creates the Oklahoma Education Improvement Fund. Section 2 levies an additional 1% sales and use tax with "[a]ll revenue from the sales tax and the use tax levied" being used to fund the Oklahoma Education Improvement Fund created by Section 1. Section 3 directs the percentage distribution of the monies in the Fund for certain educational purposes including, common education (69.5%), higher education (19.25%), career and technology education (3.25%), and early childhood education (8%). Section 4 provides for a $5,000 increase in teacher salaries to be funded with 86.33% of the common education distribution under Section 3.[7] Section 5 directs that funds "expended or distributed from the Oklahoma Education Improvement Fund shall supplement, and shall not be used to supplant or replace, other state funds" supporting education. Section 5 also directs the State Board of Equalization to "examine and investigate appropriations from the Fund each year," and if it finds that education funding was supplanted by monies from the Fund, the State Board of Equalization must "specify the amount by which education funding was supplanted." If education funding was supplanted by monies from the Fund, Section 5 directs that "the Legislature shall not make any appropriations for the ensuing fiscal year until an appropriation in that amount is made to replenish the Oklahoma Education Improvement Fund." Section 6 provides the effective date of the proposed amendment, and Section 7 provides a severability clause.[8]

¶ 12 The subject of the proposed amendment is the Oklahoma Education Improvement Fund. Each section of the proposed amendment is " 'reasonably interrelated and interdependent, forming an interlocking "package" ' " deemed necessary by the initiatives' drafters to assure effective public education improvement funding.[9] Proponents drafted the petition with each component being necessary to the accomplishment of one general design.[10] The proposal stands or falls as a whole.[11] For example, if a voter agrees that the Oklahoma Education Improvement Fund should be created but does not agree that an additional one cent sales

---

5. *Id.* n. 34, 927 P.2d at 566 n. 34 (citing *Rupe*, 1955 OK 223, 286 P.2d 1094, and *In Re Initiative Petition No. 271*, 1962 OK 178, 373 P.2d 1017) (internal citations omitted) (emphasis added). The germaneness test under the one general subject rule of Art. 24, § 1 is "more liberal" than the germaneness test applied to legislative acts under the single-subject rule of Art. 5, § 57. *See id.*

6. *Id.* ¶ 16, 927 P.2d at 566.

7. We again note the only challenge brought by the opponents of the petition was under the one general subject rule of Art. 24, § 1. Opponents did not challenge the teacher pay raise portion of the proposal as a special law. Regardless, this Court has held that the special law provision of Art. 5, § 59 "applies to the 'Legislative Department' " and not to a constitutional amendment approved by the people. *Eastern Okla. Bldg. & Const. Trades Council v. Pitts*, 2003 OK 113, ¶ 13, 82 P.3d 1008, 1013.

8. *See* Petitioners' App. A.

9. *In re Initiative Petition No. 314*, 1980 OK 174, ¶ 67, 625 P.2d at 605 (citing *Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization*, 22 Cal.3d 208, 149 Cal.Rptr. 239, 583 P.2d 1281 (1978)).

10. *In re Initiative Petition No. 363*, 1996 OK 122 n. 33, 927 P.2d at 566 n. 33.

11. *In re Initiative Petition No. 314*, 1980 OK 174, ¶ 75, 625 P.2d at 603.

tax is the appropriate funding mechanism to do so, then the voter must choose whether to approve the proposal based on such considerations. If, on the other hand, a voter agrees that an additional one cent sales tax is the appropriate funding mechanism to fund the Oklahoma Education Improvement Fund, but does not agree with the percentage distribution of the monies as set forth in Section 3, then again, the voter must choose whether to approve the proposal based on such considerations. Such choices are the consequence of the voting process rather than any constitutional defect in the proposal.[12] The proposed initiative petition clearly constitutes a single scheme to be presented to voters, and each section is germane to creating and implementing the Oklahoma Education Improvement Fund.

*Purpose of the One General Subject Rule*

■ ¶ 13 The purpose of the one general subject rule, as this Court has repeatedly held, is " 'to prevent imposition upon or deceit of the public by the presentation of a proposal which is *misleading or the effect of which is concealed or not readily understandable,*' " and to " 'afford the voters freedom of choice and *prevent "logrolling", or the combining of unrelated proposals* in order to secure approval by appealing to different groups which will support the entire proposal in order to secure some part of it although perhaps disapproving of other parts.' " *In re Initiative Petition No. 314,* 1980 OK 174, ¶ 59, 625 P.2d 595, 603 (quoting *Fugina v. Donovan,* 259 Minn. 35, 104 N.W.2d 911, 914 (1960)) (emphasis added).

¶ 14 In the case before us, opponents argue the proposal is misleading because voters will "think they are voting for teacher pay raises, when in fact, they are voting to significantly change our state's fiscal structure to give the Board of Equalization control over their local Representative and Senators deciding on education appropriations."[13] This argument ignores the powers already conferred to the State Board of Equalization in the Oklahoma Constitution. Article 10, § 21 of the Oklahoma Constitution provides that

the duty of the State Board of Equalization "shall be to adjust and equalize the valuation of real and personal property of the several counties in the state, *and it shall perform such other duties as may be prescribed by law . . . .* " Okla. Const. Art. 10, § 21(A) (emphasis added). In Art. 10, § 23, entitled "Balanced Budget," Section 23(1) states that "prior to the convening of each regular session of the Legislature, the State Board of Equalization shall certify the total amount of revenue which accrued during the last preceding fiscal year to the General Revenue Fund and to each Special Revenue Fund appropriated directly by the Legislature, and shall further certify amounts available for appropriation . . . of the revenues to be received by the state under the laws in effect at the time such determination is made, for the next ensuing fiscal year . . . ." Article 10, § 23(2) goes on to provide that "[t]he Legislature shall not pass or enact any bill, act or measure making an appropriation of money for any purpose until such certification is made and filed . . . ." All appropriations made in excess of such certification shall be "null and void" unless the Legislature follows certain specific procedures to adjust the certification amount.

¶ 15 In Art. 10, § 41, entitled the Oklahoma Education Lottery Trust Fund, the State Board of Equalization acts "to ensure that the funds from the trust fund are used to enhance and not supplant funding for education," and "examine[s] and investigate[s] appropriations from the trust fund each year." Art. 10, § 41(D). The State Board of Equalization "shall issue a finding and report which shall state whether appropriations from the trust fund were used to enhance or supplant education funding. If the State Board of Equalization finds that education funding was supplanted by funds from the trust fund, the Board shall specify the amount by which education funding was supplanted. In this event, the Legislature shall not make any appropriations for the ensuing fiscal year until an appropriation in that

---

12. *In re Initiative Petition No. 348,* 1991 OK 110, ¶ 13, 820 P.2d 772, 777.

13. Brief in Support of Application to Assume Original Jurisdiction at 12.

amount is made to replenish the trust fund." *Id.*

¶ 16 In Section 1521 of Title 69, which creates the Rebuilding Oklahoma Access and Driver Safety Fund, the State Board of Equalization also acts to "ensure that the funds from the ROADS Fund are used to enhance and not supplant state funding for the Department of Transportation," and "the State Board of Equalization shall examine and investigate expenditures from the fund each year." 69 O.S. Supp. 2013 § 1521(E). If the State Board of Equalization finds that funds were used to supplant state funding for the Department of Transportation, the Board "shall specify the amount by which such funding was supplanted," and in this event, "the Legislature shall not make any appropriations for the ensuing fiscal year until an appropriation in that amount is made to replenish state funding for the Department of Transportation." [14]

¶ 17 The State Board of Equalization already examines the General Revenue Fund and each Special Revenue Fund and certifies to the Legislature the amounts available for appropriation in the upcoming fiscal year. The State Board of Equalization audits the Lottery Education Fund in the same way it would audit the Education Improvement Fund. The Lottery Education Fund was proposed and passed by the people in 2004. For more than ten years now, since the implementation of the Fund and the yearly auditing process by the State Board of Equalization, there has been no legal challenge. Thus, any suggestion by Petitioners at oral argument that the implementation of the Education Improvement Fund would negatively affect the legislative appropriations process or usurp legislative fiscal policy-making is entirely speculative at this point.[15] We decline, at the pre-election stage, to declare the proposal unconstitutional on nothing more than speculation.[16]

¶ 18 Opponents also argue that including funding for higher education and common education in the same proposal constitutes logrolling because each is "established in separate articles of the constitution." [17] We first note that Art. 13 of the Oklahoma Constitu-

---

14. *Id. See also* 70 O.S. 2601–2605; 62 O.S. 34.87.

15. In *In re Initiative Petition No. 348*, 1991 OK 110, 820 P.2d 772, opponents challenged the legality of a petition that sought to amend Art. V, § 33 of the Oklahoma Constitution to require all revenue raising bills to be approved by a majority of the people at the next general election unless such revenue bill was approved by a three-fourths vote of both houses. Opponents argued that the proposal would severely limit the Legislature's ability to raise new revenue. Opponents challenged the proposal under the one general subject rule and argued that the proposal violated the rule because it would *affect* more than one subject.

The Court found the proposal did not violate the one general subject rule and that although the amendment, if adopted, could affect other articles of the constitution, such was insufficient reason for the Court to deny the people of Oklahoma the right to vote on the petition, "though indeed, the [p]etition's effect may result in subsequent challenges." *Id.* ¶ 12, 820 P.2d at 776. Notably, in that case, the opponents also argued that the proposal would destroy the entire design for financing state governments as organized in the Oklahoma Constitution. The Court again rejected the argument, finding that "the people have the sovereign right under the reserved power to institute constitutional tax reform by way of the initiative process," and that "specific legisla-

tive grants of power will always be subject to the reserved power of the people under Article V, § 1." *Id.* ¶ 16, 820 P.2d at 778. The Court also noted it was "mere conjecture" as to whether the petition would destroy the state financing scheme, and declined to invalidate the petition on such speculation. *Id.* ¶ 18, 820 P.2d at 778.

16. In *In re Initiative Petition No. 358*, 1994 OK 27, 870 P.2d 782, opponents challenged an initiative petition that proposed enactment of the Oklahoma Lottery Act. In that case, the opponents argued the proposal would unconstitutionally delegate the Legislature's fiscal policy-making power because the Lottery Authority had the authority to create the formula for determining gross revenues and net revenues. The Court rejected the opponents' argument and found that the proposal specified the percentage of gross lottery revenues to be paid into the state treasury and the purposes for which the revenues could be appropriated by the Legislature. Thus, the language of the proposed measure authorizing the Lottery Authority to determine "net revenues" did not *clearly contravene* Art. IV, § 1 or Art. V, § 55 of the Oklahoma Constitution. The Court specifically held it would "not interpret the contents of an initiative proposal, nor speculate implementation, at th[e] pre-election stage." *Id.* ¶ 12, 870 P.2d at 787.

17. Brief in Support of Application to Assume Original Jurisdiction at 9.

tion, entitled "Education," creates not just a common public school system, but also the Board of Regents of the University of Oklahoma. Title 70 of the Oklahoma statutes includes acts governing common education, career and technology education, and higher education.[18] Additionally, the Lottery Education Trust Fund delineates specific educational purposes and programs for which the funds can be used and does not treat common and higher education as separate and distinct. The Lottery Education Trust Fund includes appropriations for, among others: 1) K–12 public education "including but not limited to compensation and benefits for public school teachers and support employees"; 2) early childhood development programs; 3) tuition grants, loans and scholarships for higher education; 4) construction of educational facilities for "elementary school districts, independent school districts, the Oklahoma State System of Higher Education, and career and technology education"; and 5) "[e]ndowed chairs for professors at institutions of higher education operated by the Oklahoma State System of Higher Education." [19]

¶ 19 In *In re Initiative Petition No. 363*, the Court defined logrolling in the context of initiative petitions as "the combining of unrelated proposals." [20] In *In re Initiative Petition No. 344*, 1990 OK 75, 797 P.2d 326, proponents filed an initiative petition, seeking to repeal Article VI of the Oklahoma Constitution and replace it with a new Article VI. Article VI defines the executive branch of government. The proposed changes were numerous and unrelated and ranged from changing the method of selecting the Lieutenant Governor to adding the requirement that the State Auditor examine the books of school districts and provide uniform accounting systems for school districts and municipalities to repealing the constitutional authorization for the Department of Mines. Proponents challenged the constitutionality of the petition, alleging it violated the one

general subject rule of Art. 24, § 1. The Court found the topics were tenuously connected at best, and "not so intertwined as to require that they be adopted at the same time in order to preserve the integrity of each section." *Id.* ¶ 9, 797 P.2d at 329. The Court held that "[c]learly the placing of sole authority with the Governor to grant reprieves, commutation, and pardons is not dependent on the method of electing the Lt. Governor or a cabinet form of government." *Id.* ¶ 9, 797 P.2d at 329.

¶ 20 In *In re Initiative Petition No. 342*, 1990 OK 76, 797 P.2d 331, proponents presented an initiative petition, which sought to repeal and re-enact Article IX of the Oklahoma Constitution. That Article dealt with the Oklahoma Corporation Commission. The petition covered multiple loosely related subjects including removal of the prohibition against foreign corporations consolidating with domestic corporations, removal of the provision abrogating the fellow-servant doctrine rule, removal of the requirement that mining and public service corporations arbitrate labor disputes, and removal of the prohibition against bank or trust companies holding or controlling stock in another bank or trust company. The Court found the petition violated the one general subject rule of Okla. Const. Art. 24, § 1 and held: "There are numerous subjects covered by the Petition ranging from financial institutions holding stock in another financial institution to the power of eminent domain of foreign corporations to the fellow-servant doctrine rule. The only connection that these topics have to each other is that they all tangentially relate to the general subject of corporations. Otherwise, they are unrelated." *Id.* ¶ 8, 797 P.2d at 333.

¶ 21 The proposal in the case before us is markedly different from the proposals struck down in *Initiative Petition No. 344* and *Initiative Petition No. 342* which included completely unrelated proposals. The proposal in this case does not amount to logrolling and

---

18. *See, e.g.,* School Code of 1971 in 70 O.S. §§ 1–101–27–103; Career and Technology Education in 70 O.S. §§ 14–101–14–112; Junior Colleges–Construction and Maintenance in 70 O.S. §§ 2201–2212; Higher Education Code in 70 O.S. §§ 3101–8005.

19. Okla. Const. Art. 10, § 41(B).

20. 1996 OK 122, ¶ 15, 927 P.2d at 566.

constitutes a single scheme to be presented to voters.

### Conclusion

¶ 22 Our inquiry today is limited to whether or not Initiative Petition No. 403 violates the one general subject rule of Art. 24, § 1. We hold that it does not and find it is legally sufficient for submission to the people of Oklahoma.

¶ 23 REIF, C.J., COMBS, V.C.J., EDMONDSON, GURICH, JJ., MITCHELL, THORNBRUGH, SJ., concur.

¶ 24 KAUGER, WINCHESTER, TAYLOR (by separate writing with whom KAUGER, WINCHESTER, JJ., join), JJ., dissent.

¶ 25 WATT, COLBERT, JJ., disqualified.

TAYLOR, J., with whom KAUGER and WINCHESTER, JJ., join, dissenting:

¶ 1 I respectfully dissent to the Court's decision finding no constitutional infirmity with Initiative Petition No. 403. The Court is presented with a clear example of logrolling—what Article XXIV, Section 1 of the Oklahoma Constitution intends to prevent. An extremely popular one-time pay raise for a group of state employees paired with other less popular tangentially related questions is repulsive to this constitutional provision. The plain language of Article XXIV, Section 1 requires each proposition in an initiative petition to be of one general subject. This proposed constitutional article to provide a pay raise for a small group of state employees, paired with an increase in funding for common education and higher education, a 1% sales tax, and the enhancement of the Board of Equalization's power is a perfect example of what Article XXIV, Section 1 was written to prevent. Even if logrolling were not the determinative issue, the proposed initiative petition impacts several other constitutional provisions in which allocations for salaries are delegated to the Legislature, and only the Legislature.[1]

¶ 2 The Respondents admitted during oral argument that amending our founding document to give a pay raise to one group of state employees is unprecedented. Unprecedented may undersell this point. Stop and think about this proposal for a moment—our Constitution will be amended to grant a one-time pay raise to a group of state employees. Is constitutional amendment to become the new vehicle for pay raises for state employees going into the future? It is evident that this unprecedented constitutional pay raise is being proposed because it is the popular subject in this collection of independent and unrelated provisions. Without the pay raise provision, Initiative Petition No. 403 would likely stand no chance with the voters.

¶ 3 It is the duty of this Court to follow the rule of law and the Oklahoma Constitution. This case is not simply an approval or disapproval of increasing pay for common education teachers of this state. If that were the case, it would sail through these challenges and be adopted by the people. I would send Initiative Petition No. 403 back to the Respondents and require the questions of a public-school-teacher pay raise, an increase in the state sales tax, the marriage of common education and higher education, and an increase in the Board of Equalization's powers to be presented to the voters as separate conditional propositions.

¶ 4 Three impediments exist as Initiative Petition No. 403 is written currently. Initiative Petition No. 403 violates Article XXIV, Section 1 of the Oklahoma Constitution, violates Oklahoma's separation of powers as set out in the Constitution, and deceives the voters by failing to identify each crucial change to be voted on in the gist. We address each impediment in turn.

1. Appropriations are exclusive to the legislature and as a fundamental principle, may not be delegated to any executive or administrative officer. To do so would violate not only Article V, Section 55 of the Oklahoma Constitution, but also Article I, Section 4, "by which the government is divided into three separate and distinct departments."

*Wells v. Childers*, 1945 OK 365, ¶ 36, 196 Okla. 353, 165 P.2d 371, 376. " 'The Legislature, unless prohibited by the Constitution, has a right to declare fiscal policy.' " *In re State Bldg. Bonds Comm'n*, 1950 OK 45, ¶ 10, 202 Okla. 454, 214 P.2d 934, 937 (quoting *Ward v. Bailey*, 198 Ark. 27, 127 S.W.2d 272, 278 (1939)).

## I. Initiative Petition No. 403 Violates Article XXIV, Section 1

¶5 Amendment by initiative petition is a long-held right to Oklahomans, enshrined in the Constitution. *See* Okla. Const. art. V, § 1; Okla. Const. art. XXIV, §§ 1, 3. "We cannot undervalue the importance of the constitutional right, under the Oklahoma Constitution, to initiative and referendum." *In re Initiative Petition No. 349, State Question No. 642*, 1992 OK 122, ¶19, 838 P.2d 1, 8. But the Constitution has imposed upon this Court the duty and responsibility to " 'see the petitions for change actually reflect the voters['] intent and comply with the requirements set out in both the Constitution and statutes.' " *Id.* ¶14, 838 P.2d at 7 (quoting *In re Initiative Petition No. 344, State Question No. 630*, 1990 OK 75, ¶16, 797 P.2d 326, 330). I believe the Court must begin with Article XXIV, Section 1 of the Oklahoma Constitution:

No proposal for the amendment or alteration of this Constitution which is submitted to the voters shall embrace more than one general subject and the voters shall vote separately for or against each proposal submitted; provided, however, that in the submission of proposals for the amendment of this Constitution by articles, which embrace one general subject, each proposed article shall be deemed a single proposal or proposition.

Okla. Const. art. XXIV, § 1.

### a. The controlling test

¶6 Following Article XXIV, Section 1, a proposed amendment or article to the Constitution must embrace only one general subject. Our case law has clarified the test the Court must apply:

"If the different changes contained in the proposed amendment all cover matters necessary to be dealt with in some manner, in order that the Constitution, as amended, shall constitute a consistent and workable whole on the general topic embraced in that part which is amended, and if, logically speaking, they should stand or fall as a whole, then there is but one amendment submitted. But if it is not such that the voter supporting [the amendment] would reasonably be expected to support the principle of the others, then there are in reality two or more amendments to be submitted, and the proposed amendment falls within the constitutional prohibition."

*In re Initiative Petition No. 344*, 1990 OK 75, ¶8, 797 P.2d at 329 (quoting *In re Initiative Petition No. 314, State Question No. 550*, 1980 OK 174, ¶62, 625 P.2d 595, 603–04). Put another way, "[v]oters should not have to adopt measures of which they really disapprove in order to embrace propositions that they favor ... [or that] are not so related that a voter supporting one of the proposed measures can reasonably be expected to support all of the changes." *In re Initiative Petition No. 342, State Question No. 628*, 1990 OK 76, ¶10, 797 P.2d 331, 333. This controlling test applies to initiative petitions proposing new articles, repealing and replacing articles, and proposing amendments. The plain language of Article XXIV, Section 1 makes no distinction.

¶7 The Court fails to tackle our case law as it is written, and it instead picks and chooses the law it follows. The Court has long since backed away from the test announced in *Rupe v. Shaw*, 1955 OK 223, 286 P.2d 1094, as the controlling test for initiative petitions by article—doing so multiple times. *See In re Initiative Petition No. 344*, 1990 OK 75, 797 P.2d at 330; *see also In re Initiative Petition No. 342*, 1990 OK 76, ¶4, 797 P.2d at 333 (following *In re Initiative Petition No. 314*, 1980 OK 174, 625 P.2d at 595, not *Rupe* ); *In re Initiative Petition No. 382*, 2006 OK 45, ¶¶13–14, 142 P.3d 400, 407–08 (failing to recognize the "germaneness" test and instead applying the plain language of Article XXIV, Section 1, "one general subject"). The Court does not take these cases into account, instead relying on older cases from the early 1980s and a 1996 opinion which I read as an aberration from our "one general subject" jurisprudence. The "germaneness" test the majority applies grossly ignores the plain language of Article XXIV, Section 1. *In re Initiative Petition No. 344* and *In re Initiative Petition No. 342* follow the plain language of Article XXIV, Section 1. It is an approach I whole-heartedly en-

dorse and believe this Court would be wise in applying today.

### b. Application of the controlling test

¶ 8 Initiative Petition No. 403 embraces a multitude of distinct subjects; three subjects alone violate the "general subject rule" of Article XXIV, Section 1: common education, higher education, and new power to the Board of Equalization. The Court must be on guard for logrolling in initiative petitions because to force voters to adopt a provision they do not support in order to adopt one they do is the very purpose of Article XXIV, Section 1. The Court's opinion sums it up perfectly:

> For example, if a voter agrees that the Oklahoma Education Improvement Fund should be created but does not agree that an additional one-cent sales tax is appropriate funding mechanism to do so, then the voter must choose whether to approve the proposition based on such considerations.

Majority Opinion, ¶ 12. While the Court attempts to argue that the choice is left to the voter, its argument perfectly encapsulates the very ill Article XXIV, Section 1 seeks to prevent: logrolling.

¶ 9 The Respondents argue that the one general subject of Initiative Petition No. 403 is Oklahoma Education Improvement. One immediate problem with this general subject is that is marries common education and higher education. Oklahoma has not before treated the two as similar subjects. Since the founding of our state, we have separated common education and higher education and treated them as "entirely different subjects, the one to the University, the other to the public or common schools of the state." Regents of Univ. of Okla. v. Bd. of Educ., 1908 OK 67, ¶ 6, 95 P. 429, 430 (internal quotation marks omitted). The Oklahoma Constitution establishes common education in Article XIII. Okla. Const. art. XIII. Oklahoma voters set out higher education in new articles, XIIIA and XIIIB, in the Oklahoma Constitution in the 1940s. Okla. Const. art. XIIIA; Okla. Const. art. XIIIB. The Board of Edu-

cation and the Superintendent of Public Instruction supervise common education. Okla. Const. art. XIII, § 5. The Board of Regents supervise higher education. Okla. Const. art. XIIIB, § 1.

¶ 10 I take issue with Petitioner's neatly spun buzzwords, Oklahoma Education Improvement, as the subject is merely a catchall for the myriad of topics in the petition before the Court. One need only look to two of the Court's previous cases to understand why. We have twice recently addressed initiative petitions that seek to improve state government. The first is In re Initiative Petition No. 344, 1990 OK 75, 797 P.2d 326, a case that can be easily summarized as executive branch improvement. The second is In re Initiative Petition No. 342, 1990 OK 76, 797 P.2d 331, a case whose general subject could be identified as Corporation Commission improvement.

¶ 11 In re Initiative Petition No. 344, the Court examined an initiative petition by article, one that proposed to rework the executive branch or executive branch improvement. 1990 OK 75, ¶ 9, 797 P.2d at 329 (proposing to address "the method of the election of the Lt. Governor ... to changing the Executive Branch to cabinet form of government, to repealing the constitutional authority for certain boards"). The Court rejected the proposed general subject, executive branch improvement, writing that the petition "simply does not give the voters a choice. Voters who may be in favor of changing the method of electing a Lt. Government are compelled to accept a cabinet form of government...." Id. ¶ 11, 797 P.2d at 329–30.

¶ 12 In re Initiative Petition No. 342, the Court again examined an initiative petition by article, a proposal that would rework the Corporation Commission, Corporation Commission improvement. 1990 OK 76, ¶ 7–8, 797 P.2d at 333. The Court cut through the proposed general subject, identifying the "only connection that these topics have to each other is that they all tangentially relate to the general subject of corporations." [2] Id. The Court must look beyond the

---

**2.** If the Court's jurisprudence followed Rupe and

In re Initiative Petition No. 319 as the Court

general subject proposed to determine if the topics the initiative petition seeks to alter are truly one general subject. Simply because proponents could identify a common trait did not satisfy the constitutional test. And here, the proponents of Initiative Petition No. 403 seek to put forward the general subject of Oklahoma Education Improvement. But digging into the topics in the initiative petition (pay raise for common education teachers, college prep funding, career tech funding, higher education funding, increase in sales tax, and additional power to the Board of Equalization), it becomes clear that voters would be forced to adopt measures of which they readily disapprove in order to embrace the popular teacher pay-raise proposal. A proposition argued by the Court in its opinion nonetheless. I refuse to buy into the Respondent's overly broad subject as each topic is only tangentially related to Oklahoma Education Improvement.

## II. Initiative Petition No. 403 Violates Oklahoma's Separation of Powers

¶ 13 Initiative Petition No. 403 contains within it an enhancement of power for the Board of Equalization. The Board of Equalization is tasked with ensuring "that the monies from the Oklahoma Education Improvement Fund are used to enhance and not supplant funding for education," allowing the Board to "examine and investigate appropriations from the Fund each year." Initiative Petition No. 403, § 5(c). The enforcement mechanism in Section 5 is where the constitutional impediment raises its head.

If the State Board of Equalization finds that education funding was supplanted by monies from the Oklahoma Education Improvement Fund, the State Board of Equalization shall specify the amount by which education funding was supplanted. In this event the Legislature shall not make any appropriations for the ensuing fiscal year until an appropriation in that amount is made to replenish the Oklahoma Education Improvement Fund.

*Id.* The Board of Equalization can effectively shut down the Oklahoma Legislature. Counsel for Respondents directly admitted as much in oral argument.

¶ 14 The Oklahoma Constitution provides that "the Legislative, Executive, and Judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others." Okla. Const. art. IV, § 1. The Legislature has the constitutional power to make appropriations for the support of common schools of the state and appropriations to higher education. Okla. Const. art. XII, § 1a; Okla. Const. art. XIIIA, § 3. The State Board of Equalization, on the other hand, is an executive board. Okla. Const. art. X, § 21.

¶ 15 The Court examined a similar issue in *Fent v. Contingency Review Board*, 2007 OK 27, ¶ 1, 163 P.3d 512, 516. In *Fent*, the Legislature created a three-person mandatory review board, that included two legislative members, and gave it oversight and the ability to approve or deny the use of appropriated funds as expenditures over a specific state fund. *Id.* ¶ 14, 163 P.3d at 524. The Court held that the review board created continued legislative control over enacted appropriations which offended the constitutional concept of separated powers and was a usurpation of executive power. *Id.* ¶ 15, 163 P.3d at 523. The Court noted that "[p]assing an appropriation bill is clearly a legislative lawmaking function while the administration of appropriated funds is a purely executive task." *Id.* ¶ 12, 163 P.3d at 521. In the present case, Initiative Petition 403 would give an executive board control over appropriations, a clear legislative function, in violation of the concept of separation of powers as

proposes, in the *executive branch* and *Corporation Commission improvement* cases, a tangentially related subject would suffice. The Court used those words, *tangential relation,* when noting a concession by the challenging party in *In re Initiative Petition No. 363, State Question No. 672,* 1996 OK 122, ¶ 14, 927 P.2d 558, 566, that the subjects were of one general subject. It is the only time in our jurisprudence those words

are used to relate topics to "one general subject"; in our other case law, *tangential relation* is used to indicate subjects which do not meet Article XXIV, Section 1's requirement. I believe the Court used the incorrect test in *In re Initiative Petition No. 363,* but the Court's result was correct under the controlling test the Court has long followed and I follow here.

outlined in the Oklahoma Constitution. And as Initiative Petition No. 403 contains no repeal of the legislative power being taken by the Board of Equalization, the Initiative Petition is in direct conflict with Article V of the Oklahoma Constitution, the power of the legislative branch.

¶16 Despite Respondents' argument to the contrary, this Court can examine any constitutional infirmity in an initiative petition.[3] Part of the Court's constitutional duty is to examine these constitutional concerns in initiative petitions to "prevent the holding of a costly and unnecessary election." *Initiative Petition No. 349*, 1992 OK 122, ¶18, 838 P.2d at 8. It is the responsibility of this Court to examine all possible constitutional infirmities of the petition to prevent the people from voting on an unconstitutional amendment. *See id.* While a similar mechanism exists for the Board of Equalization to oversee the Legislature's use of the lottery funds, that system has never been challenged. And to close our eyes to a constitutional infirmity simply because no problem or challenge has arisen with the Board of Equalization's oversight of the lottery-funds process would be a dereliction of this Court's constitutional duty. The question is now squarely before the Court to decide.

¶17 The usurpation of legislative power by the Board of Equalization is glaring in Initiative Petition No. 403. Unfortunately, the Court turns a blind eye to these constitutional infirmities by relying on *In re Initiative Petition No. 358, State Question No. 658*, 1994 OK 27, 870 P.2d 782. This support is unpersuasive as the Court in *In re Initiative Petition No. 358* made the same mistake—it chose to punt on a question of constitutionali-

ty: "Although it is conceivable that the implementation of the proposed measure may result in an unconstitutional usurpation of the legislative power of appropriation, we refrain from further consideration of this argument because implementation cannot be discerned from the face of the proposed measure." 1994 OK 27, ¶9, 870 P.2d 782, 786. The Court is once again punting on a clear constitutional issue, the violation of the separation of powers between the executive and legislative branches of government. This issue should not be left for another day, but should be addressed here and now.

¶18 In a future budget year, where failure of revenue will require the Legislature to make cuts across the board to all agencies, the Legislature will cut common education and higher education at its own peril due to the powers now given to the Board of Equalization. If the Board of Equalization does not approve of the Legislature's decisions on education appropriations, then the Board of Equalization can shut down the entire legislative branch of government until it follows the command of an executive branch entity. We may very well see the Legislature grind to a halt as the Board of Equalization test-drives its new power.

¶19 There is a reason that a state employee pay raise through constitutional amendment has never been utilized before. The Oklahoma Constitution sets forth precise appropriations procedures for the Legislature to utilize, and the Legislature only. This proposed provision thwarts a core function of the Legislature and clashes with other constitutional provisions which control the appropriations process. *See* Okla. Const. art. 5, §§ 55–56;[4] Okla. Const. art. 13A, § 3;[5]

---

**3.** It is also relevant to note that the Court has long ago dispensed with the requirement that a challenge to an Initiative Petition cannot be heard until it has been put before the voters; a rule first announced in *Threadgill v. Cross*, 26 Okla. 403, 109 P. 558, 562 (1910), that "the constitutionality of an initiative petition is not subject to review prior to its enactment by the voters." *Initiative Petition No. 349*, 1992 OK 122, ¶26, 838 P.2d at 10. We cannot (and should not) go back to the *Threadgill* rule and allow Oklahoma voters to believe that their "votes on matters of intense public concern count," when this Court is already fully aware that the proposed measure is subject to being struck

down as unconstitutional." *Id.* ¶32, 838 P.2d at 10.

**4.** Article V, Section 55 provides:

No money shall ever be paid out of the treasury of this State, nor any of its funds, nor any of the funds under its management, except in pursuance of an appropriation by law, nor unless such payments be made within two and one-half years after the passage of such appropriation act, and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated and the object to which it is to be

Okla. Const. art. 13, § 1A.[6] In essence, Initiative Petition No. 403 contains internal logrolling and causes external logrolling of other relevant constitutional provisions.

## III. Initiative Petition No. 403 Violates Title 34, Section 3 of the Oklahoma Statutes

¶ 20 The final problem with Initiative Petition No. 403 is with the gist or proposed ballot title.[7] Title 34, Section 3 of the Oklahoma Statutes requires initiative petitions to contain a "simple statement of the gist of the proposition," and in no more than 200 words (for the ballot title), explain the changes in the proposition. The Court must examine the gist with the purpose of Title 34, Section 3 in mind: "to prevent deceit and fraud." *In re Initiative Petition No. 342*, 1990 OK 76, ¶ 11, 797 P.2d at 333; *see* 34 O.S. Supp. 2015, § 9(B)(1). "[N]oncompliance is fatal." *In re*

applied, and it shall not be sufficient for such law to refer to any other law to fix such sum.
Article V, Section 56 provides:
The general appropriation bill shall embrace nothing but appropriations for the expenses of the executive, legislative, and judicial departments of the State, and for interest on the public debt. The salary of no officer or employee of the State, or any subdivision thereof, shall be increased in such bill, nor shall any appropriation be made therein for any such officer or employee, unless his employment and the amount of his salary, shall have been already provided for by law. All other appropriations shall be made by separate bills, each embracing but one subject.

5. Article XIIIA, Section 3 provides:
The appropriations made by the Legislature for all such institutions shall be made in consolidated form without reference to any particular institution and the Board of Regents herein created shall allocate to each institution according to its needs and functions.

6. Article XIII, Section 1A provides:
The Legislature shall, by appropriate legislation, raise and appropriate funds for the annual support of the common schools of the State to the extent of forty-two ($42.00) dollars per capita based on total state-wide enrollment for the preceding school year. Such moneys shall be allocated to the various school districts in the manner and by a distributing agency to be designated by the Legislature; provided that nothing herein shall be construed as limiting any particular school district to the per capita amount specified herein, but the amount of state funds to which any school district may be

*Initiative Petition No. 342*, 1990 OK 76, ¶ 11, 797 P.2d at 333.

¶ 21 This Court can examine the gist before the petition has even been put before potential signatories as the Legislature "has deemed the gist a necessary part of the pamphlet and we are not at liberty to ignore that requirement." *In re Initiative Petition No. 384, State Question No. 731*, 2007 OK 48, ¶ 13, 164 P.3d 125, 130. In *In re Initiative Petition No. 384*, the Court held that the petition in question did not satisfy the statutory requirement for the gist before the petition was put before voters. *Id.* The initiative petition at issue added a new section to the Oklahoma Statutes on schools that required 65% of operational expenditures to be used for "classroom instructional expenditures." *Id.* ¶ 1, 164 P.3d at 126. The gist did not state the legislative sanctions imposed on "non-conforming schools and the possibility of waivers by the state superintendent." *Id.*

entitled shall be determined by the distributing agency upon terms and conditions specified by the Legislature, and provided further that such funds shall be in addition to apportionments from the permanent school fund created by Article XI, Section 2, hereof.

7. The proposed ballot title is as follows:
This measure adds a new Article to the Oklahoma Constitution. The new Article creates a limited purpose fund to improve public education. It levies a one cent sales and use tax to provide revenue for the fund. It allocates funds for specific institutions and purposes related to the improvement of public education, such as increasing teacher salaries, addressing teacher shortages, programs to improve reading in early grades, to increase high school graduation rates, college and career readiness, and college affordability, improving higher education and career and technology education, and increasing access to voluntary early learning opportunities for low-income and at-risk children. It requires an annual audit of school districts' use of monies from the fund. It prohibits school districts' use of these funds for administrative salaries. It provides for an increase in teacher salaries. It requires that monies from the fund not supplant or replace other education funding. The Article takes effects [sic] on the July 1 [sic] after its passage.
Initiative Petition No. 403, Proposed Ballot Title. The gist of Initiative Petition No. 403 is identical to the proposed ballot title with the exception of the last sentence of the proposed ballot title. The analysis therefore is the same. *See In re Initiative Petition No. 384, State Question No. 731*, 2007 OK 48, ¶ 7, 164 P.3d 125, 129.

¶ 11, 164 P.3d at 129. Because this information was not identified to voters, "a potential signatory, looking only at the gist, did not have sufficient information to make an informed decision about the true nature of the proposed legislation." *Id.* ¶ 12, 164 P.3d at 130.

¶ 22 As currently written, the gist does not alert the voters to each change in Initiative Petition No. 403. The biggest problem is the gist's description of the Board of Equalization's power: Initiative Petition No. 403 "requires that monies from the fund not supplant or replace other education funding." Initiative Petition No. 403, Gist. The new powers given to the Board of Equalization have already been highlighted and clearly are not addressed by the one minor sentence in the gist. The gist is easily deceitful to the voters in this respect and must fail. Just as in *In re Initiative Petition No. 384,* a potential signatory or voter would not have sufficient information to make an informed decision about the true nature of Initiative Petition No. 403.

¶ 23 The gist also lumps common and higher education into what it calls "public education." Public education, or public schools, has long referred to common education, not college. *See Regents of Univ. of Okla.,* 1908 OK 67, ¶ 6, 95 P. at 430. Voters would not be able to discern how Initiative Petition No. 403 marries common education and higher education for the first time in this state. The gist is dead on arrival. Along with the unconstitutionality of Initiative Petition No. 403, the gist or proposed ballot title deceives potential signatories and potential voters. I would send Initiative Petition No. 403 back to the Respondents as the gist does not satisfy the statutory requirements set out by the Legislature.

## CONCLUSION

¶ 24 Public support for a public-school-teacher pay raise is very high in this state. I could not agree more that it is a noble goal and purpose. Yet this Court has an obligation to follow the rule of law and the Constitution. And when such a well-supported measure is used as a Trojan horse to add provisions into the Constitution which are only tangentially related to public-school-teacher pay raises, the Constitution and the Court become the gatekeepers. The voters should decide these issues, but they should not be forced to support public-school-teacher raises along with an increase in the sales tax, the marriage of common education and higher education, and an increase in the power of the Board of Equalization all in one vote. I respectfully dissent.

I have been authorized to state that Justices KAUGER and WINCHESTER join in this writing.